1

                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                         ALEXANDRIA DIVISION

UNITED STATES OF AMERICA       .    Criminal No. 1:12cr38
                               .
    vs.                        .    Alexandria, Virginia
                               .    April 27, 2012
JENNIFER CHURCHILL,            .    9:37 a.m.
                               .
         Defendant.            .
                               .
. . . . . . . . . . .

                   TRANSCRIPT OF MOTIONS HEARING
              BEFORE THE HONORABLE LEONIE M. BRINKEMA
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:           KIMBERLY RILEY PEDERSEN, AUSA
                              PATRICIA M. HAYNES, AUSA
                              United States Attorney's Office
                              2100 Jamieson Avenue
                              Alexandria, VA 22314


FOR THE DEFENDANT:            KERRI L. RUTTENBERG, ESQ.
                              CHRISTOPHER J. SMITH, ESQ.
                              Jones Day
                              51 Louisiana Avenue, N.W.
                              Washington, D.C. 20001-2113


OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
                              U.S. District Court, Fifth Floor
                              401 Courthouse Square
                              Alexandria, VA 22314
                              (703)299-8595



                         (Pages 1 - 15)




            COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1           P R O C E E D I N G S

2              (Defendant not present.)

3         THE CLERK:  Criminal Case 12-38, United States of
4   America v. Jennifer Churchill.  Would counsel please note their
5   appearances for the record.
6         MS. PEDERSEN:  Good morning, Your Honor.  Kim
7   Pedersen and Trish Haynes for the United States.
8         THE COURT:  Good morning.
9         MS. RUTTENBERG:  Good morning, Your Honor.  My name
10  is Kerri Ruttenberg.  I represent Ms. Churchill, and along with
11  me at counsel table is Chris Smith.  Mr. Smith will be doing
12  the arguing today.
13        THE COURT:  All right.  Now, do we have a waiver of
14  appearance by Ms. Churchill?
15        MS. RUTTENBERG:  Your Honor, I don't have a formal
16  waiver.
17        THE COURT:  We need to get that for the record.
18        MS. RUTTENBERG:  I will submit that, Your Honor.
19  That's fine.  She, she does waive her appearance.  She resides
20  in California.  She -- her resources, financial resources are
21  exceptionally limited.  We're in the case pro bono; she had a
22  CJA lawyer prior to us; but we will supplement the record with
23  a formal waiver.
24        THE COURT:  All right.
25        MS. RUTTENBERG:  Thank you.

3

1     THE COURT: Now, before the Court are two defense
2 motions, but I also see that you have a motion for discovery
3 that's noticed for next week.
4     MS. RUTTENBERG: Yes, Your Honor.
5     THE COURT: I don't intend to see lawyers every week
6 on a case, so I want to see if we can try to resolve that as
7 well. This is the last matter on our docket this morning.
8     Let me maybe perhaps take that motion first, all
9 right?
10     MS. RUTTENBERG: Certainly.
11     THE COURT: And when you file motions, I don't need
12 all that back-and-forth. I mean, I read it; but, you know,
13 each blow-by-blow description of what's been done, I don't want
14 to take time having to read that.
15     The bottom line is where are you today, April 27, in
16 terms of getting discovery from the government?
17     MS. RUTTENBERG: Sure, Your Honor. And I apologize
18 for the detail. I appreciate Your Honor giving me instruction.
19 This is the first time I've appeared before you on your
20 preferences, and we'll do that going forward.
21     The morning after we filed the motion to compel, the
22 government reached out to me and said that I could provide a
23 hard drive, an external hard drive for them to copy the data
24 from my -- what was seized from my client's home in January.
25 We've provided that.

4

1            Yesterday we received an imaged hard drive. We have
2   not had a chance to look at it yet. It's actually an internal
3   hard drive that came back. I'm sure that it's fine.
4            The only question that I have in my mind, Your Honor,
5   is that the, the document that came along with it that was
6   basically the chain of custody document notes that what's on
7   that hard drive are images from Ms. Churchill's computer; and
8   while that was one of the items that was seized from her home,
9   as you saw in my motion, there were many, many items containing
10  electronic data that were -- that are the subject of that
11  motion to compel, including other external hard drives, CDs,
12  DVDs, telephones, an iPad; and all of that data is what we were
13  expecting would be on that drive.
14           It may very well be there. Again, I can tell the
15  Court we haven't had a chance since yesterday, when we got it,
16  to open that hard drive; but that's also subject to the motion.
17           And then beyond that, there were other materials that
18  were seized from her home which -- some of which we know
19  constitute *Brady* material, and we've shared with the government
20  why we believe those materials are *Brady*, and those are things
21  like copies of photographs, printed out photographs. Check
22  registers, I believe, were also on the property receipt.
23           So there's other materials that we're expecting to
24  receive from the government. I don't know the government's
25  position in terms of when they expect to disclose that

5

1 material. I certainly agree with the Court, I would prefer not
2 to be in court every week on motions, either --
3        THE COURT: All right.
4        MS. RUTTENBERG: -- and it's not my intention to do
5 so if we can resolve it.
6        THE COURT: All right. Ms. Pedersen?
7        MS. PEDERSEN: Your Honor, we've been communicating
8 back and forth about sharing discovery; and I, I expect us to
9 continue to do that and for us to provide what we've seized
10 from the defendant's residence to counsel. I don't think
11 there's a need for us to be here in court to litigate it.
12        THE COURT: All right.
13        MS. PEDERSEN: Whatever she wants we will get
14 available to her, either producing copies or making it
15 available for inspection at mutually convenient times.
16        THE COURT: Well, yeah, but, I mean, the point is
17 this case is moving along; and we're not changing the trial
18 date because of discovery problems. Anything that has been
19 seized from the defendant she has an absolute right to have
20 immediate access to. There should be no delay on this.
21        So I expect you to vigorously -- and if it's a
22 problem with the agents, then the agents need to get on board;
23 or they'll scuttle your case. I don't think it's reasonable to
24 expect lawyers to have to go to Manassas to look at the stuff.
25 That in my view meant getting from here to Manassas --

1           MS. PEDERSEN:  It can be brought to the U.S.
2  Attorney's Office, Your Honor.  That's not a problem.
3           THE COURT:  And frankly, if the defendant -- if the
4  discovery materials were the defendant's, then unless there's
5  some unique problem, she's got a right to copies of that.
6           MS. PEDERSEN:  Absolutely.
7           THE COURT:  She doesn't just have to go and view it.
8           MS. PEDERSEN:  Absolutely.
9           THE COURT:  So I expect this problem to be resolved;
10  and quite frankly, if it's not solved, Ms. Ruttenberg, you can
11  send a brief pleading, file it next week, and I'll address it
12  probably just on the papers, all right?
13           So Ms. Pedersen and cocounsel have been before this
14  Court many times.  I don't expect there to be any problem; but
15  let's get this moving, all right?
16           MS. PEDERSEN:  We've been communicating, Your Honor.
17  We expect to resolve it.
18           THE COURT:  Well, I don't want communication; I want
19  production, all right?
20           MS. PEDERSEN:  Yes, ma'am.
21           THE COURT:  So let's just take care of it.
22           All right.  Now, there are two other motions; and I
23  guess, Mr. Smith, you're going to argue the other two motions.
24  So just for the record, the motion for discovery I'm granting,
25  all right?  Everything that's in that motion appears to be fair

7

1   and proper that you should have.  I'm going to assume it's been
2   taken care of.
3           If there's still a problem, then, you know, renew the
4   motion.  File something early next week, all right?
5           MS. RUTTENBERG:  I appreciate that very much, Your
6   Honor.  And just for the record, I want to echo Ms. Pedersen's
7   comments that for the most part, we have been communicating.
8   We actually asked for a meeting with the government the day
9   after we filed some motions because of some scheduling issues;
10  and the very next day, we were in their office meeting.  So I
11  do appreciate that.
12          And I also just for the record want to note that we
13  had made a representation in our motion that what had already
14  been produced was about 70,000 e-mails.  Since that, we've
15  actually found that we were off by about 116,000 more; and then
16  there's the additional data that was provided yesterday on this
17  hard drive.  So it is a tremendous amount of information; and
18  for that reason, we agree with the Court that it would be just
19  unworkable for us to review that in Manassas; and we also
20  because our client is in California really need to be able to
21  talk with her about the material as well.  So I appreciate Your
22  Honor's order on that.
23          THE COURT:  All right.  Now, the motion for
24  severance, Mr. Smith, I've read all the pleadings.  I don't
25  need to have it repeated.  It is not -- motions for severance

1  are seldom granted.  There have to -- the plaintiff (sic) has
2  to make really an extraordinary showing that being tried with
3  the codefendants would result in such basically a travesty
4  that, you know -- and I don't think you have that in this
5  pleading.
6           However, I am concerned by what you've alleged in
7  your papers; and this dovetails with the motion for bill of
8  particulars.  As I understand it, your client's role in this
9  case is that she was involved in working with some of the
10 images of the, of the women, and she was involved in doing some
11 digitizing of photographs, right?
12          MR. SMITH:  Yes, Your Honor.
13          THE COURT:  And that she knew that these were Classy
14 Escorts-related photographs, but your theory is that your
15 client did not know that Classy Escorts or the other entities
16 were involved in actual prostitution.
17          MR. SMITH:  Your Honor, the government has alleged in
18 their indictment that, that Ms. Churchill knew --
19          THE COURT:  Correct.
20          MR. SMITH:  -- and in our meeting with the U.S.
21 Attorney's Office, they've made clear that their theory is that
22 she knew inferentially based on the nature of the photos that
23 she was editing; and our position is that Ms. Churchill did not
24 know and had no reason to know.
25          THE COURT:  Okay.  I mean, that's how I read your

9

1   papers; and I think that's very, very interesting.  If the case
2   is that weak and it goes to trial, it won't survive a motion at
3   the end of the government's case.  I mean, quite frankly, it
4   does sound like a weak case from what you've represented; and I
5   didn't really read in the government's response anything that
6   changes my view of that, that it appears to be a very weak
7   case.
8           Having said that, however, the issue with severance
9   is in a multi-defendant conspiracy case, there are defendants
10  who play a major role in the conspiracy and those who play a
11  minor role.  There are some defendants who have acts of
12  violence involved and others who don't.  I don't think there's
13  anything new or unusual about this case.
14          I can assure you that between jury instructions and
15  the way in which this Court tries cases, if the evidence is not
16  there against your client, she'll, she'll be out of the case;
17  but I'm not going to sever it, all right?  I think the
18  government has adequately alleged in the indictment, and that's
19  all we have to go on at this point, a sufficient connection.
20  Whether they can prove it is another issue, all right?  So I'm
21  going to -- I want you to understand that.
22          Also, I mean, with multi-defendant cases, there are
23  very clear instructions to the juries; and juries in this
24  district really are smart; and they understand their
25  instructions.  They'll be told they have to evaluate the case

10

1   as to each individual defendant on its own merits, and that
2   will be made clear to the jury, so you don't have to worry
3   about that.
4           MR. SMITH:  Your Honor, may I make one point?
5           THE COURT:  Yeah.
6           MR. SMITH:  It is -- it's our position that in this
7   case, a limiting instruction would be difficult; because the
8   jury in this case on one hand is going to be instructed that --
9           THE COURT:  Oh, I saw that argument in your papers.
10  Don't worry about it.
11          MR. SMITH:  Sure.
12          THE COURT:  The limiting instruction will adequately
13  protect your client if it gets to that point; and as I said, if
14  your other argument is correct, that there's just not enough
15  evidence to have the case go forward, I'm not going to let the
16  case go to the jury for them to surmise.  There's got to be
17  real evidence.
18          All right, so that moves then to the motion for bill
19  of particulars.  Now, again, a motion for bill of particulars
20  is meant to do two things.  It's, No. 1, meant to make sure a
21  defendant clearly understands what she has been charged with;
22  and two, to protect against a jeopardy issue, all right?  And
23  as the government correctly points out in their opposition,
24  they've alleged all the essential elements of the offense
25  against your client.

1          Now, whether or not they can prove that she knowingly
2    participated, that's an evidentiary issue down the road; but
3    you-all clearly know what she's been charged with doing, that
4    is, that she knowingly was involved in a conspiracy to travel
5    or cause others to travel in interstate commerce, blah, blah,
6    blah, blah, blah.  That's clear, so that element of the bill of
7    particulars or the need for it is not there.
8          Your bill of particulars is really in my view a
9    discovery motion.  You want the government to specify for you
10   at this point what actual evidence they have that your client
11   knew that Classy Escorts was in the business of prostitution or
12   knew that she was participating in the conspiracy.  That's it,
13   right?  That's the case.
14         MR. SMITH:  Your Honor, your point is well taken.  I
15   believe our position is that when we met with the government at
16   the U.S. Attorney's Office, they informed us that their case
17   was that Ms. Churchill knew that she was violating law
18   inferentially based on the nature of photographs; and we
19   appreciate that information; but our position is that the
20   government should put that on the record in the form of a bill
21   of particulars.
22         THE COURT:  Well, I don't think that's what the bill
23   of particulars is for, certainly not in this circuit.  I mean,
24   again, it's meant to give your client adequate notice as to
25   what she's been charged with and to protect her against double

12

1   jeopardy; and the indictment does that.

2            So I'm denying the motion for bill of particulars;
3   but I definitely want the government in this case to think very
4   carefully and you've got an obligation to make sure that you
5   have sufficient evidence to go forward in, in trying this
6   woman.  If all you have is inferences, that sounds like a very
7   weak case.

8            Given the types of images that you see these days on
9   television and in media of very scantily clad and lascivious
10  types of poses, to infer from that that somebody knows that
11  those pictures are related to prostitution is quite a stretch;
12  and I would expect the government would have to have more than
13  that.

14           Is your client in the regular business of doing
15  photography or digital whatever?

16           MR. SMITH:  Your Honor, she does regularly digitally
17  edit photos.  She Photoshops photos as a side business.  She's
18  a nurse -- her day job is she is a nurse, but she does do this
19  regularly and advertises her services as a photo editor.

20           THE COURT:  And how much money was she making in
21  that?  I mean, is the revenue she was receiving commensurate
22  with what we would call sort of legitimate Photoshop business?

23           MR. SMITH:  Yes, ma'am, I believe that's the case.

24           THE COURT:  Because again, one of the areas of
25  indirect evidence would be if she was being paid well above the

                                                                13

1    market rate.  That gives a potential inference that there's

2    something, you know, under the table.  Taxes were being

3    properly declared, and all of the recordkeeping was by the

4    book?

5              MR. SMITH:  Yes, Your Honor.  She did declare taxes.

6    She did pay taxes on all of her income.

7              THE COURT:  And as far as you can tell from having

8    looked at the papers, the recordkeeping is accurate; in other

9    words, if it was for Classy Escorts or if it was for one of the

10   named defendants, those names appear in the records?

11             MR. SMITH:  Your Honor, I haven't personally reviewed

12   her, her tax returns.  What I can represent to you is she

13   charged $20 a photo to edit photos, which is the same price, I

14   believe, that she, she always charged to individuals to edit

15   photos.  She had a Web site that advertised this.

16             She, she paid all her taxes; and she edited really as

17   part of her business all types of photos, ranging from, you

18   know, individuals who sent in glamour shots to be edited to

19   different types of models in the Los Angeles area who might

20   have had a wide range of photos, shall I put it, to be edited

21   for promotional purposes for them.

22             I know that she's done editing work for various

23   legitimate companies, and I believe that her fixed rate that

24   she charged as $20 a photo was charged here and was charged

25   elsewhere to many legitimate clients.

14

1        THE COURT:  How long had she been in the Photoshop
2   business?
3        MR. SMITH:  I believe several years, Your Honor.  I'm
4   sorry; I don't know the exact time period off the top of my
5   head; but this was not a sort of fly-by-night thing.
6        May I have your indulgence for just a second, Your
7   Honor?
8        Your Honor, my colleague is a little bit more attuned
9   to the facts in this case and might be more equipped to answer
10  Your Honor's questions.
11       THE COURT:  Well, I'm not going to try the case
12  today; but I just think that the government needs to think very
13  carefully.  I will reconsider the motion for severance down the
14  road when you have more discovery.  So I'm denying it now but
15  without, without prejudice, all right?
16       MR. SMITH:  Thank you, Your Honor.
17       THE COURT:  And I want to make sure that the
18  government thinks very carefully and looks very thoroughly at
19  the evidence they have to support the charge against this
20  particular defendant, all right?
21       MR. SMITH:  Thank you for your time.
22       THE COURT:  All right, that's my ruling; and I think
23  that concludes the docket for today.  We'll recess court.
24       MS. PEDERSEN:  Thank you, Your Honor.
25       MR. SMITH:  Thank you, Your Honor.

15

1      (Which were all the proceedings

2      had at this time.)

3

4      CERTIFICATE OF THE REPORTER

5   I certify that the foregoing is a correct transcript of

6   the record of proceedings in the above-entitled matter.

9                                          /s/
                                    Anneliese J. Thomson