IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL NO. 1:12CR038 |
| v. | ) | |
| | ) | Judge BRINKEMA |
| | ) | |
| JENNIFER CHURCHILL | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE UNDISCLOSED EVIDENCE AND TO COMPEL IMMEDIATE PRODUCTION OF *BRADY* AND *GIGLIO*

COMES NOW the United States of America, by and through its undersigned counsel, and responds to the defendant's motion to exclude undisclosed evidence and to compel immediate production of undisclosed *Brady* and *Giglio* information. The United States specifically objects to any of the defendants' discovery requests that are outside the scope of the legal obligations of the United States and responds to the motions as follows:

I.   The Items Seized From Defendant Churchill's Home Are Available

After a discovery conference with counsel on May 8, 2012, it was determined that there are three (3) items of evidence seized from the defendant's residence in California on January 26, 2012, that have not yet been produced to the defendant: a blackberry, a Sprint Palm cellphone, and an Apple iPhone 4S.

According to the case agent, the defendant's blackberry and Sprint Palm cellphone were sent, along with approximately 24 other items of digital evidence, including computers, cellphones, external hard drives, cds, dvds, thumb drives and cameras, from the FBI office in Los Angeles to a regional computer forensic laboratory in Orange County, California, for

analysis. Due to the large and varied amount of electronic devices and data seized from the defendant and submitted to the lab, that analysis was only recently completed.

On or about April 26, 2012, the forensic lab returned the blackberry and Sprint Palm cellphone to the FBI. Due to some confusion, an electronic image containing the data from the blackberry and Sprint Palm cellphone were returned to the FBI office in Los Angeles instead of being forwarded to Virginia. As soon as that error was discovered, the case agent directed that the FBI/Los Angeles send the digital images to the FBI/Manassas, Virginia. The case agent is now in possession of the electronic data and the government will produce it to the defendant on May 21, 2012.

Since these electronic items are cellphones, it is expected that the data retrieved from the items will consist mainly of telephone numbers, names, text messages and/or photographs. This is a small amount of data that, according to the case agent, is reasonably searchable within one to two hours of receipt.

The Apple iPhone 4S is currently in the possession of the case agent. However, that device is password protected and the forensic analysts who examined the phone were unable to unlock it. The defendant has refused to provide her password to the government in order to open the device. The FBI has advised the undersigned that Apple, the manufacturer of the device, may be able to assist the government in unlocking the device. However, prior to doing so, Apple requires a court order. The government is in the process of drafting a search warrant and appropriate court order to Apple for assistance in unlocking the Apple iPhone. If that search warrant is authorized, the iPhone will be sent to Apple for assistance. However, at this point, it is unknown how long that process will take or even if Apple will be able to render assistance in

unlocking the device. Once the device is unlocked, it is expected that it will be sent back to the FBI to obtain an imaged copy of its data.

While the delay in producing some of the voluminous electronic data is unfortunate, it resulted mainly from the length of time needed to analyze the sheer volume of electronic devices seized from the defendant in this case. The delay was not willful, deliberate nor made for the purpose of disadvantaging the defendant in the preparation of her defense. These electronic devices (cellphones) are expected to contain a limited amount of data, which, according to the case agent, would reasonably be searchable in one to two hours.

II. The Exclusion of Possibly Relevant Evidence is Too Harsh a Sanction Where The Reasons for the Government's Delay Were Not Willful or Deliberate

The government objects to the defendant's motion to exclude undisclosed evidence on the ground that the government has provided, and continues to provide, extensive discovery, in various forms, to the defendant, as soon it becomes available. The exclusion of such evidence, if it is relevant and material, is a sanction greater than necessary to punish the government and secure future compliance.

It is currently unknown what, if any, relevant data is contained on any of these devices. As a result, it is not clear whether the defendant has been prejudiced, in any way, by the delay. Moreover, it is unlikely that the amount of data imaged from the devices will be so voluminous that the defendant cannot reasonably review it and make use of its information well in advance of trial on June 18, 2012.

Here, the government is acting, and continues to act in good faith in producing discovery promptly upon its receipt. The defendant does not contend otherwise. The government's

inability to produce some of the data seized from three of the defendant's cellphones is not being done for any improper purpose, such as to delay or prevent the defendant's access to the data.

"In determining a suitable and effective sanction, a court must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government." *United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997). Here, the reasons for the government delay was based, large part, upon the length of time it took for forensic analysts to review the very large amount of various types of electronic data. It is not alleged that the government acted in bad faith or in a reluctant or recalcitrant manner to deny the defendant access to any materials.

Since it is currently unknown what information, if any, is relevant or material, or how long it would take to prepare to make effective use of this data at trial, it is not possible at this time to conclude that the defendant has been prejudiced by the delayed of this information. The government contends that since the delay was not willful, the exclusion of any relevant evidence is too harsh a sanction. The Court should deny the motion and re-consider it later only if it becomes clear that the information contained in these electronic devices is relevant and material and the defendant had insufficient time to prepare and make effective use of it at trial.

   III.   The *Brady* and *Giglio* Materials

The defendant alleges that it "believes" the government is in possession of *Brady* and *Giglio* information that has yet to be produced and asks the Court to order the government produce it immediately. However, the defendant does not state what this *Brady* or *Giglio* information is or provide the basis for this belief.

The agreed upon discovery Order entered in this case provides that the Government shall comply with its obligations to produce promptly exculpatory information as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Agurs*, 427 U.S. 97 (1976).  The United States fully acknowledges its legal obligations concerning discovery and it fully intends to comply with both the letter and spirit of the law governing discovery, including Fed.R.Crim.P. 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972) and the *Jencks* Act, 18 U.S.C. § 3500.

The government also recognizes that impeachment evidence falls within the purview of *Brady/Giglio*.  Through the discovery Order in this case, the government has agreed to provide, *Giglio* and *Jencks* material to the defendant five (5) days before trial.  Indeed, the government has already produced over 8,900 pages of material to the defendants that far exceed the requirements of Rule 16 and the *Jencks* Act.  The government has also made available for inspection, copying and photographing by the defense tangible items seized from the defendant's residence.  This evidence includes potential *Brady/Giglio* information as well as Rule 16 and *Jencks* material.

The defendant insists that the government is currently in possession of *Brady* information that is "material to her guilty and/or sentencing," and outlines certain issues below for which it seeks information.  While the government has already provided this information in discovery, and not knowing exactly what kind of *Brady/Giglio* information to which the defendant refers, the government will continue to disclose any additional evidence that may be favorable to the defendant and material to guilt and/or sentencing.

    A.    The Government's Evidence Shows that the Defendant Had Knowledge that <u>Classy DC Escorts Was a Business Engaged in Prostitution</u>

The government responds to the defendant's list of non-exhaustive information sought, as follows:

(a) The government has already disclosed in discovery the fact that the charged defendants, and others engaged in prostitution, made efforts to disguise, hide and otherwise conceal the fact that Classy DC Escorts was a business enterprise engaged in prostitution. For example, the information provided in discovery shows that none of the individuals involved in Classy's business, or related businesses, appear to use the word "prostitution" to discuss the true nature of the business.

The discovery further shows that the practice among the conspirators was to use code words commonly known to those familiar with the prostitution business. These code words are designed to conceal the true nature of the business and make it appear as if the businesses were legitimate. For example, the words "escort" or "escort agency" refer to a prostitute and a businesses engaged in prostitution. As previously disclosed to the defendant, the government does not currently have any evidence to suggest that any potential witness or co-conspirator will testify that he or she explicitly told the defendant that Classy DC Escorts was engaged in prostitution;

(b) The government has already disclosed, that, upon information and belief, none of the co-defendants, or others associated with Classy DC Escorts, ever met the defendant in person. In addition, it has been stated in open court, and in the presence of defense counsel, that the co-defendants in this case never knew or met the defendant in person. In fact, the vast majority of the communications between the owners of Classy DC Escorts and affiliated

agencies was through electronic communication and, as the actual communications between them and the defendant have shown, none of the communications appear to have used the word prostitution;

(c) The government has previously turned over evidence seized from the defendant's computers which shows that she did photo editing work for other clients in addition to Classy DC Escorts. Beginning in 2009 or so, the defendant advertised her own photo editing business on the internet. Her website purports to show examples of other photo editing work she has done for clients not associated with Classy DC Escorts. However, the discovery in this case shows that the defendant did not keep "formal" records of all of her past jobs so it is unclear, how many, if any, clients the defendant had un-related to prostitution.

As previously disclosed discovery shows, there is ample evidence that as far back as 2008, the defendant was doing photo editing work for certain clients who advertised themselves on the internet as independent prostitutes. These women advertised their availability by the hour for "incall," "outcall" or "overnight" appointments for various amounts of money depending on the amount of hours per appointment, i.e., $600/1 hour, $1,200/2 hours, etc.

The discovery further shows that the photos that the defendant edited for these women were taken by her former boyfriend at his Los Angeles studio. Emails and other information produced in discovery show that the defendant knew and was aware that a large portion of her ex-boyfriend's business was photographing prostitutes. The defendant also created a website for one of her ex-boyfriend's photography businesses, advertised on Eros and Cityvibe, that was marketed exclusively to the prostitution industry.

For a period of time, the defendant assisted her boyfriend the daily in running his photography business and, as a result, learned how to re-touch photographs. She also learned how to create and maintain websites for the internet. The defendant received client referrals from her ex-boyfriend and created websites for women engaged in prostitution in order to market their prostitution services on the internet. At least one of the prostitution/escort websites the defendant created for a client was also advertised on her ex-boyfriend's website. As a result of her personal and professional association with her ex-boyfriend, the defendant was aware prostitutes do not refer to themselves as prostitutes and that they advertise and offer sexual services, under the guise of "companionship" or other services, to men in exchange for money.

(d)     All of the evidence, and reasonable inferences to be drawn from the evidence discovered to date, shows that the defendant knew that Classy DC Escorts, and its affiliated businesses, were engaged in promoting and advertising female "escorts" for the purposes of prostitution (i.e., sexual services in exchange for money) and that they were internet businesses engaged in prostitution.

For example, a review of the defendant's computer, which was produced in discovery, shows that as recently as January 16, 2012, the defendant visited the Classy DC Escorts website. The Classy DC Escorts webpage advertised that "escorts" were available 24/7 (24 hours a day/7 days a week) and provided the "working name" for each prostitute, her available dates and location, her height, weight, bust size and photograph. The defendant edited over 1,500 digital images of women emailed to her by Classy DC Escorts and its affiliated agencies. The defendant not only visited the Classy DC Escorts website but visited the specific pages for a

Case 1:12-cr-00038-LMB   Document 165   Filed 05/18/12   Page 9 of 12 PageID# 781

number of their "escorts" or prostitutes, such as Sierra, Jillian and Nikkie, whose photos she edited.

Moreover, the evidence produced in discovery show that the defendant was aware that Classy DC Escorts made efforts to conceal the illegal nature of its business. For example, many of the digital images the defendant edited and emailed back to Classy DC Escort had the faces of the women blurred. Beginning in 2011, the defendant created a "watermark" for the photos she edited for ClassyDCEscorts.com which identified the photos as belonging to an "escort" agency.

(e) The government has already produced copies and original photographs of the defendant which may tend to reflect, refer, suggest or otherwise show that the defendant herself may have posed for professional photographs and/or may have been a "model" of some kind. The evidence produced to date reflects that the defendant had many photographs of herself taken in a number of different poses.

B. Any Evidence that Tends to Show, Suggest or Refer to the Fact that the Defendant is Not Guilty Has Been and Will Continue to Be Made Available

As part of its investigation in this case, the government asked defense counsel, whether the defendant had ever worked as an escort or prostitute for Classy DC Escorts. Counsel replied in the negative. The government has continued to investigate the defendant, her knowledge of illicit activity by Classy DC Escorts and her role in the charged conspiracy.

In response to some of the defendant's representations that the government is in possession of some undisclosed information favorable to the defendant, the government responds as follows:

1. The government has not uncovered any evidence suggesting that the defendant was or sought to be an escort or prostitute with Classy DC Escorts or its affiliated agencies,

Prime DC, DMV Indys or Elite Girlfriends Club[1]. The FBI has interviewed one subject who indicated that he had seen a photograph of the defendant posted on an unrelated prostitution website. When asked about it, the defendant said that her image was used without her consent;

    2.    The government is not aware of any evidence suggesting that the defendant became involved with Classy DC Escorts by responding to an advertisement for escort services;

    3.    While the government agrees that the defendant received digital photographs for editing via email, edited those photos, received payment of $20 to $25 per photo via Paypal and returned those photos via email, the government contends that the defendant's role in the conspiracy was not strictly "limited" to those activities on behalf of Classy DC Escorts;

    4.    The government agrees that the defendant's role in Classy DC Escorts did not include any of the other day-to-day activities engaged in by other defendants and witnesses. For example, the government is currently unaware of any evidence suggesting that the defendant scheduled client appointments or pick up prostitution proceeds for Classy DC Escorts, Prime DC, DMV Indys or Elite Girlfriends Club.

    5.    The government strongly disagrees that the defendant had no actual knowledge of the nature of Classy DC Escorts' prostitution business. The government's evidence shows that the defendant knew that within the prostitution industry, no one referred to prostitutes as such; that "escort" was another name for a prostitute and that "escorts" did not overtly advertise themselves as providing sexual services in exchange for money.

---

[1] Hereinafter, any reference to Classy DC Escorts also includes Prime DC, DMV Indys and Elite Girlfriends Club.

The evidence also shows that the defendant knew of the unlawful nature of internet "escort" or prostitution businesses and was aware that ClassyDCEscorts.com was an internet business involved in prostitution activity. When editing photos sent by Classy DC Escorts, the defendant was aware that this business was posting these photographs almost immediately on the internet in order to advertise particular prostitutes. The government has shared all of this information with the defendant during discovery and is prepared to prove this, and more, beyond a reasonable doubt at trial.

IV. Conclusion

The government respectfully moves the Court to deny the instant motions for the reasons stated herein.

        Respectfully submitted,

        NEIL H. MACBRIDE
        UNITED STATES ATTORNEY

By:   /s/_____
      Kimberly Riley Pedersen
      Patricia M. Haynes
      Assistant United States Attorneys
      United States Attorney's Office
      Justin W. Williams U.S. Attorney's Building
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Phone: 703-299-3700
      Fax: 703-299-3982
      Email Address: kimberly.riley.pedersen@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via ECF this 18th day of May, 2012, which will send a copy of such filing (NEF) to all parties.

By:   /s/_____
Kimberly Riley Pedersen
Patricia M. Haynes
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Fax: 703-299-3982
Email Address: kimberly.riley.pedersen@usdoj.gov