1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .    Criminal No. 1:12cr38-1
                              .
        vs.                   .    Alexandria, Virginia
                              .    May 16, 2012
KURAYE TAMUNOIBI AKUIYIBO,    .    10:00 a.m.
a/k/a "G," a/k/a Gerald,      .
                              .
              Defendant.      .
                              .
.  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:           KIMBERLY R. PEDERSEN, AUSA
                              PATRICIA M. HAYNES, AUSA
                              United States Attorney's Office
                              2100 Jamieson Avenue
                              Alexandria, VA 22314


FOR THE DEFENDANT:            STUART A. SEARS, ESQ.
                              Zwerling, Leibig & Sears, P.C.
                              114 North Alfred Street
                              Alexandria, VA 22314



OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
                              U.S. District Court, Fifth Floor
                              401 Courthouse Square
                              Alexandria, VA 22314
                              (703)299-8595



(Pages 1 - 42)



COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

```
 1                    P R O C E E D I N G S
 2                        (Defendant present.)
 3              THE CLERK:  Criminal Case 12-38, United States of
 4    America v. Kuraye Tamunoibi Akuiyibo.  Would counsel please
 5    note their appearances for the record.
 6              MS. PEDERSEN:  Good morning, Your Honor.  Kim
 7    Pedersen and Patricia Haynes for the United States.
 8              THE COURT:  Good morning.
 9              MR. SEARS:  Good morning, Your Honor.  Stuart Sears
10    on behalf of Mr. Akuiyibo, who is present.
11              THE COURT:  All right, Mr. Akuiyibo, come up to the
12    lectern.  The clerk will place you under an affirmation.
13          KURAYE TAMUNOIBI AKUIYIBO, DEFENDANT, AFFIRMED
14              THE COURT:  All right, Mr. Akuiyibo, you have just
15    taken a promise to tell the truth in answering all of the
16    Court's questions.  If you should lie in answering any
17    question, the government could prosecute you for a new and
18    separate crime called perjury.  Do you understand that?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  For the record, what is your full name?
21              THE DEFENDANT:  Kuraye Tamunoibi Akuiyibo.
22              THE COURT:  And, Mr. Akuiyibo, how old are you?
23              THE DEFENDANT:  I'm 32 years old.
24              THE COURT:  How much education have you completed?
25              THE DEFENDANT:  College graduate.
```

3

1          THE COURT:  All right.  So I assume you have no

2    problem reading, writing, understanding, or speaking English;

3    is that correct?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Are you a United States citizen?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Are you presently on probation or parole

8    from any other criminal matter?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Are you at this time under the care of a

11    doctor for any physical or mental condition?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Within the last 24 hours, have you taken

14    any medication, whether over the counter or by prescription?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Are you at this time under the influence

17    of any alcohol or drugs?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Now, we have several documents we need to

20    go over today in connection with your guilty pleas.  Because

21    you are pleading guilty to one charge that's not in the pending

22    indictment, I first need to address with you this waiver of

23    indictment, which has been filed today; and it has the date of

24    May 15 on it.  Did you sign the waiver?

25          THE DEFENDANT:  Yes, Your Honor.

4

1          THE COURT:  Was it today or yesterday that you signed

2    it?

3          THE DEFENDANT:  Yesterday.

4          THE COURT:  All right, that's fine.  And before you

5    signed the waiver, did you discuss it with Mr. Sears?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Did he explain to you that under the law

8    and Constitution of the United States, you have an absolute

9    right to require the prosecutors to go before a federal grand

10   jury with this new charge they want to bring against you of

11   being involved in a violent crime in aid of racketeering

12   activity?  Did you understand that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And again, you've already been indicted;

15   but just so I'm sure you understand how that process works, a

16   federal grand jury is made up of anywhere from 16 to 23

17   ordinary citizens who are brought together on a random basis;

18   and the job of a grand jury is to act as a kind of reviewing

19   system to make sure that before a person is publicly charged

20   with criminal activity, there, in fact, is sufficient evidence

21   to support the charge.

22         So exactly what happens in the grand jury process,

23   which is a secret process, is a federal prosecutor like

24   Ms. Pedersen will go into the grand jury room, advise the grand

25   jurors that she believes the person has violated certain

5

1   federal criminal laws; and then the prosecutor presents

2   evidence to the grand jurors.  That could be the testimony of

3   witnesses; it could be photographs, bank records, any type of

4   evidence.

5           At the completion of the presentation, if at least 12

6   members of that grand jury are satisfied that the evidence

7   establishes probable cause to believe the person has committed

8   the crime or crimes the government wants to charge, then the

9   grand jury issues a document called an indictment; and you

10  already had an indictment issued against you for other charges;

11  and that is how a felony-level criminal prosecution will

12  normally begin in federal court.

13          Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  So the grand jury process is considered

16  to be a way of protecting a person's rights, because it exists

17  to ensure that a person is not publicly charged with serious

18  criminal activity without there being a genuine factual basis

19  to support the charge.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  A person can give up his right to that

22  grand jury review process by signing a waiver of indictment.

23  The word "waiver" in the law means to give something up; so by

24  waiving indictment, you're giving up your right to have a grand

25  jury review this charge; and instead, you're allowing the

6

1    prosecutors to come to court this morning and file this violent

2    crime in aid of racketeering activity offense against you using

3    a document called a criminal information, which will not have

4    been tested by a grand jury.

5            Do you understand that?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  And did you understand all that before

8    you signed the waiver?  In other words, did Mr. Sears basically

9    explain to you what I've just explained to you?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Now, other than the plea agreement that

12   we're going to discuss in a few minutes, has anybody promised

13   or suggested to you that by waiving indictment, you would

14   somehow get a lighter sentence or more favorable treatment by

15   the Court?

16           THE DEFENDANT:  No, Your Honor.

17           THE COURT:  Has anyone put any force or pressure on

18   you to waive indictment this morning?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Mr. Sears, did you have enough time to

21   thoroughly go over this waiver with your client?

22           MR. SEARS:  I did, Your Honor.

23           THE COURT:  Are you satisfied that Mr. Akuiyibo is

24   entering the waiver in a knowing and voluntary fashion?

25           MR. SEARS:  I am.

7

1          THE COURT:  All right.  Based upon these answers to

2    the Court's questions, I'm satisfied that the defendant has

3    entered his waiver in a knowing and voluntary fashion, with the

4    full advice of counsel; so the waiver is accepted; and that

5    means the government can now file the criminal information that

6    I've referred to; and that information -- have you received a

7    copy of the information, Mr. Akuiyibo?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  I'm going to just briefly

10   abbreviate it.  It's alleged in the information that you along

11   with other persons were members and associates of a criminal

12   organization known as Classy DC Escorts and that that entity

13   constituted an enterprise as defined in federal law as a group

14   of individuals associated with criminal activities that

15   affected interstate and foreign commerce and that the primary

16   purpose of the enterprise was to earn money for its members and

17   associates through the operation of a prostitution business and

18   promoting and enhancing the enterprise of its members and

19   associates' activities.

20          And then it's alleged that in or about September of

21   2010, in this district and elsewhere, for the purpose of

22   maintaining and increasing position in Classy DC Escorts, that

23   you unlawfully and knowingly assaulted Kobla Fiagbedzi with a

24   dangerous weapon, in violation of the D.C. Code.

25          That's a summary of the charge that's been filed

8

1    against you.  Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And to that charge, how do you want to

4    plead, guilty or not guilty?

5          THE DEFENDANT:  Guilty, Your Honor.

6          THE COURT:  All right.  Before the Court accepts your

7    guilty plea to that charge or to Counts 1 or 2 of the

8    indictment, I'm going to go over a series of questions with you

9    about your plea agreement and the facts of the case.  At any

10   point this morning if you should change your mind and decide

11   you don't want to plead guilty to any one or all of these

12   charges, you can still withdraw your guilty pleas.

13         Do you understand that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Now, the plea agreement -- and I

16   assume -- is this exactly the same plea agreement we had in

17   chambers?

18         MS. PEDERSEN:  Yes, Your Honor.

19         THE COURT:  Any changes?

20         MS. PEDERSEN:  There's been no change at all.

21         THE COURT:  All right.  Then I want the defendant --

22   you have a copy of it there, Mr. Sears?

23         MR. SEARS:  I do, Your Honor.

24         THE COURT:  All right.  The 19-page plea agreement

25   that's been filed in court today has on page 18 what appears to

9

1   be your signature and the date of May 14, which would have been

2   two days ago.  So, Mr. Akuiyibo, what I want to know first of

3   all is did you, in fact, sign the written plea agreement?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  And you signed it on Monday; is that

6   correct; or was it yesterday?

7            THE DEFENDANT:  Monday.

8            THE COURT:  Monday, all right.  Now, before you

9   signed the plea agreement, did you read it over for yourself

10  word for word?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  And have you discussed it thoroughly with

13  Mr. Sears?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Approximately when did you first see a

16  copy of this written plea agreement?

17           THE DEFENDANT:  On Monday, Your Honor, the 14th.

18           THE COURT:  Before Monday, had you and Mr. Sears been

19  discussing a possible plea in this case?

20           THE DEFENDANT:  At length, Your Honor.

21           THE COURT:  At length?  All right.

22           And when you saw -- received the plea agreement on

23  Monday, was Mr. Sears with you at that time?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  All right.  So did he stay with you while

1    you read it over for the first time?

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  Roughly how long did that meeting last on

4    Monday?

5                THE DEFENDANT:  About two hours.

6                THE COURT:  All right.  Now, did you see him again

7    yesterday?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  And that's when you signed the waiver of

10   indictment?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  And did you go over the plea agreement

13   with him more on yesterday?

14               THE DEFENDANT:  Yes.  Yes, Your Honor.

15               THE COURT:  Have you had enough time to ask Mr. Sears

16   all the questions that you have about the plea agreement?

17               THE DEFENDANT:  Yes, Your Honor.

18               THE COURT:  Has he answered all of your questions to

19   your satisfaction?

20               THE DEFENDANT:  Absolutely, Your Honor.

21               THE COURT:  As you stand in court this morning, are

22   there any questions you want to ask me about the plea

23   agreement?

24               THE DEFENDANT:  No, Your Honor.

25               THE COURT:  And, Mr. Sears, just for the record, had

11

1   any other plea offers been made to you in the course of your

2   negotiating with the government?

3           MR. SEARS:  Your Honor, there's a short answer and a

4   long answer.  I mean, the short answer is yes.  There's never

5   been a formal written plea agreement other than this one, Your

6   Honor; but I've been going back and forth with the government

7   for weeks discussing various aspects of the plea agreement.

8   All of those discussions have been shared with Mr. Akuiyibo at

9   every stage of the proceedings.  He's been up to date.  I've

10  been visiting about twice a week to go over my discussions with

11  the government.

12          THE COURT:  All right.  So is it your belief that

13  every offer or variation of an offer that you've received from

14  the government has been communicated to your client?

15          MR. SEARS:  Absolutely, Your Honor.

16          THE COURT:  All right.  Now, Mr. Akuiyibo, do you

17  feel that you've been in regular contact with Mr. Sears?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And has he brought different versions of

20  the plea agreement and different versions of the statement of

21  facts to you orally?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  Now, I want you to look at

24  page 18 of the plea agreement, and right -- there are two

25  sentences right above where your signature would be, all right?

12

1    They go, "I have read this plea agreement and carefully

2    reviewed every part of it with my attorney.  I understand this

3    agreement and voluntarily agree to it."

4                Do you see those two sentences?

5                THE DEFENDANT:  Yes, Your Honor.

6                THE COURT:  Are they completely true in every

7    respect?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  Now, by telling the Court that you've

10   read the entire plea agreement and discussed it thoroughly with

11   counsel and that you understand it and are voluntarily agreeing

12   to it, that means you will be bound by everything that's

13   written in this 19-page document even if I don't go over every

14   paragraph or page with you in court today.

15                Do you understand that?

16                THE DEFENDANT:  Understood, Your Honor.

17                THE COURT:  And the reason for that result is that

18   this written plea agreement is really a written contract

19   between you and the United States government, and when a person

20   signs a written contract after thoroughly discussing it with

21   counsel and he understands it when he signs it and he signs it

22   voluntarily, then that contract is a binding legal instrument;

23   and you can't just come back to court in a couple of weeks and

24   say, "You know, I really want to change something that's on

25   page 5."

13

1          I mean, that's just too late.  Do you understand
2     that?
3          THE DEFENDANT:  Yes, Your Honor.
4          THE COURT:  Now, other than the written plea
5     agreement that's in court today, do you have any side deals or
6     side understandings with any investigator, whether federal or
7     state, any prosecutor, or anyone else concerning this case?
8          THE DEFENDANT:  No, Your Honor.
9          THE COURT:  Mr. Sears, is that correct?
10         MR. SEARS:  Yes, Your Honor.
11         THE COURT:  All right, let's turn then to page 1,
12     paragraph 1, and there it indicates you've agreed to plead
13     guilty to Counts 1 and 2 of the pending indictment and also to
14     waive indictment and plead guilty to the criminal information I
15     just described -- discussed with you.
16         Now, Count 1 of the indictment charges you with being
17     a member of a conspiracy to commit money laundering.  That is a
18     felony offense exposing you to up to 20 years in prison
19     followed by a period of up to five years of supervised release.
20         In addition, you could be required to pay a fine of
21     up to $500,000 or twice the value of the property involved in
22     the transaction, whichever number is greater; make
23     restitution -- although again in this case, is there any
24     restitution?
25         MS. PEDERSEN:  Well --

14

1          THE COURT:  You've mentioned that one individual,

2    but --

3          MS. PEDERSEN:  That's up in the air at this point,

4    Your Honor.  We're not clear if there will be.

5          THE COURT:  Were there medical injuries -- medical

6    bills incurred by that person?

7          MS. PEDERSEN:  I don't believe that there were bills;

8    but there have been some residual physical effects from that;

9    so we don't know what, if any, amount we will be asking for for

10   restitution; but as a principle, it would be applicable because

11   of the physical injury to the victim.

12         THE COURT:  All right.  Mr. Akuiyibo, do you

13   understand that there may or may not be a monetary sanction in

14   terms of having to make restitution to the victim if the

15   appropriate evidence and claims are put in the record?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  All right.  And in addition, for the --

18   for Count 1, there's a special assessment of $100 that must be

19   paid.  Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Now, Count 2 of the indictment charges

22   you with being a member of a conspiracy to travel or use

23   interstate facilities in aid of racketeering enterprise.  That

24   again is a felony and exposes you to up to five years in prison

25   followed by up to three years of supervised release; again a

15

1   fine, this time the maximum fine would be $250,000; again you

2   could have restitution; and there's an additional $100 special

3   assessment.

4           Do you understand that?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  And then in terms of the criminal

7   information, that is, the violent -- committing a violent crime

8   in aid of racketeering activity, that again is a felony that

9   exposes you to up to 20 years of imprisonment followed by a

10  period of up to five years of supervised release.  In that

11  case, the maximum fine is $250,000; and there's an additional

12  $100 special assessment.

13          Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Now, you should understand that the

16  special assessments are cumulative; so with three felony guilty

17  pleas, you're looking at a total of $300 in special

18  assessments.  Do you understand that?

19          THE DEFENDANT:  I do, Your Honor.

20          THE COURT:  All right.  Now, do you understand that

21  parole is not available in the federal system?  That means

22  whatever term of imprisonment is imposed must be fully served.

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And when the prison portion of the

25  sentence has been served, then the supervised release portion

16

1    begins.  Now, when a person is on supervised release, he is

2    under the control of a federal probation officer; and there may

3    be requirements to do certain things as well as requirements

4    not to do certain things.

5              I can't yet tell you what those conditions might be;

6    because I haven't seen the presentence report; but the key fact

7    you need to understand at this point is that if you violate any

8    condition of supervised release, you can be punished by being

9    sent back to prison; and in your case, you're exposed to as

10   much as five years of additional imprisonment if found to have

11   violated supervised release as to at least the first count in

12   the criminal information.

13             Do you understand that?

14             THE DEFENDANT:  I do, Your Honor.

15             THE COURT:  Now, when it comes time for sentencing,

16   the Court is going to need to look at two sources of law, first

17   of all the federal sentencing guidelines and then Section

18   3553(a) of Title 18, and much of the guideline issues have been

19   addressed by you and the government in paragraph 5 of the plea

20   agreement; but I first of all want to make sure you understand

21   that the way the guidelines operate, the Court needs to make

22   two decisions and then the guidelines can be calculated.

23             First we have to determine your criminal history.

24   Criminal histories are divided into six groups, each group

25   getting a number.  A category I criminal history goes to

17

1    someone who's never been in trouble with the law or has a very

2    minor record; and then as convictions, probation, or supervised

3    release violations and other problems occur in the record, the

4    score goes up, with a level VI going to the most serious

5    offenders.

6              Do you understand that?

7              THE DEFENDANT:  I do, Your Honor.

8              THE COURT:  And then the Court must determine the

9    offense conduct.  Now, every federal crime has a number given

10   to it by the Sentencing Commission; and that's called the base

11   offense level; and then depending upon the particular facts of

12   the case, that number can go up or down; and in paragraph 5 of

13   your plea agreement, this starts on page 4, there are extensive

14   number of guideline issues that you and your counsel have

15   agreed to.

16             I want to make sure you're clear that all of the

17   agreements that you've reached that are spelled out on pages 4

18   through 6 of the plea agreement are binding on you and your

19   attorney and the prosecutors but in no respect are binding on

20   the probation officer that's going to prepare the presentence

21   report, which will include a calculation of the guidelines; and

22   it's not binding on the Court when we determine what the

23   guidelines should be and what sentence you should get.

24             Do you understand that?

25             THE DEFENDANT:  I do, Your Honor.

18

1              THE COURT:  What you agreed to first of all is you

2    and the government have agreed not to seek or argue for any

3    sentence that is outside of the advisory guideline range; and

4    you've also agreed, as I understand it, that the government

5    will agree to recommend a sentence at the low end of the

6    guideline range as included in these three pages.

7              Is that your understanding?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  All right.  As I said, what happens is we

10   get the criminal history number, we get the offense number

11   calculated.  Those two numbers are put on a chart called the

12   Sentencing Guideline Table; and that will establish an advisory

13   guideline range; and what you-all have said in this plea

14   agreement of yours, that you believe if the Court were to

15   accept all of the calculations here, that ultimately the

16   guideline range would be 51 to 63 months; and apparently the

17   government would be recommending a sentence of 51 months in

18   this case, which is the low end of the guidelines.

19             Right, Ms. Pedersen?

20             MS. PEDERSEN:  That's correct, Your Honor.

21             THE COURT:  All right.  Now, again, I want to make

22   sure you understand there's absolutely no guarantee that that's

23   what you're going to get in this case.  Do you understand that?

24             THE DEFENDANT:  I do, Your Honor.

25             THE COURT:  Because the Court's going to make its own

19

1    independent decision as to what the appropriate guidelines

2    should be in the first place and, secondly, what the

3    appropriate sentence ought to be.

4          I'm not going to go through all the details of what

5    you've agreed to here in terms of the calculations, but I

6    assume you've very carefully worked through this with

7    Mr. Sears?

8          THE DEFENDANT:  Absolutely, Your Honor.

9          THE COURT:  Did he show you the sentencing guideline

10   manual and explain to you how these different numbers work?

11         THE DEFENDANT:  He did, Your Honor.

12         THE COURT:  The various increases and decreases?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  So I want to make sure you

15   understand clearly that if at the sentencing hearing I use

16   guidelines that are different from what you're expecting or

17   hoping for or impose a sentence on you that is different from

18   what you're expecting or hoping for, that is not a violation of

19   the plea agreement; and it will not give you a basis to

20   withdraw your guilty plea.

21         Do you understand that?

22         THE DEFENDANT:  I do, Your Honor.

23         THE COURT:  And just so you're clear, the Court is

24   not required to sentence within the guideline range, whatever

25   range we determine.  We have to look at it and consider it

20

1    carefully, but the Court has the authority to sentence above it

2    or below it.  Do you understand that?

3                THE DEFENDANT:  I do, Your Honor.

4                THE COURT:  And in addition to the guidelines, the

5    other factors that are not mentioned in paragraph 5, the Court

6    must look at all the 3553(a) factors as well.  So among other

7    things, we're going to need to look at the need to have a

8    sentence sufficient to deter you from engaging in similar

9    conduct in the future.

10               We need to make sure that the sentence is sufficient

11   to send a message of general deterrence to other people who

12   might be tempted to get into this kind of business because it's

13   quite lucrative.  They need to understand that there's

14   definitely a penalty to be paid.  We need to compare your

15   sentence with the sentence received by other people in the

16   conspiracy.

17               So there are many other factors besides just the

18   guidelines that the Court must take into consideration.  Do you

19   understand that?

20               THE DEFENDANT:  I do, Your Honor.

21               THE COURT:  All right.  Now, most defendants in a

22   criminal case have the right to appeal the sentence imposed on

23   them; but if you look at paragraph 6 of your plea agreement,

24   that's on page 7, the second sentence that begins with the word

25   "nonetheless," as part of this plea agreement, you are

21

1    knowingly waiving -- again that word "waive," which means

2    giving up -- your right to appeal these convictions for these

3    three counts and your right to appeal the sentence as long as

4    the sentence imposed is not greater than the statutory maximum.

5            Do you understand that?

6            THE DEFENDANT:  I do, Your Honor.

7            THE COURT:  All right.  Now, in exchange for your

8    guilty pleas, the government has agreed in paragraph 11 that it

9    will move to dismiss the remaining counts in the indictment,

10   which would be Counts 3 through 7 and 9 through 10; and in

11   paragraph 10, the government has agreed that it will not

12   further prosecute you in the Eastern District of Virginia for

13   any of the activities described either in the indictment, the

14   criminal information, or the statement of facts.

15           Now, you need to know that paragraph 10 does not

16   protect you from being prosecuted in any other jurisdiction; so

17   if the Florida authorities or the District of Columbia

18   authorities want to go after you for some conduct related to

19   this case, they can still do that.  Do you understand that?

20           THE DEFENDANT:  I do, Your Honor.

21           THE COURT:  All right.  You've agreed to cooperate

22   with the government; and that cooperation is described in

23   subparagraphs (a) through (g) but includes among other things

24   your testifying truthfully and completely at any trials, grand

25   juries, or other proceedings; your being reasonably available

22

1    for debriefings and pretrial conferences; and providing the

2    government with any documents or other evidence it might need

3    in a criminal case.

4              Do you understand that?

5              THE DEFENDANT:  I do, Your Honor.

6              THE COURT:  In paragraph 13, the government has

7    agreed it will not use against you either to increase your

8    sentence or to bring a new criminal case any completely

9    truthful information that you provide under the previous

10   paragraph.  Do you understand that?

11             THE DEFENDANT:  I do, Your Honor.

12             THE COURT:  Now, as further parts of this plea

13   agreement, you've agreed to the forfeiture of an extensive

14   amount of property.  That property is actually listed on page

15   13 of the plea agreement; but under paragraphs 17, 18, and 19,

16   you've agreed to cooperate with the government as to the

17   forfeiture of that property and any other proceeds from the

18   prostitution activities.

19             Do you understand that?

20             THE DEFENDANT:  I do, Your Honor.

21             THE COURT:  And in paragraph 20, you have agreed that

22   you will file true and correct tax returns for the years 2009

23   through 2011 within 60 days and arrange with the Probation

24   Office to pay all taxes, interest, and penalties within a

25   reasonable amount of time.  Do you understand that that's part

1    of your obligation under the plea agreement?

2            THE DEFENDANT:  I do, Your Honor.

3            THE COURT:  All right.  Now, have you had enough

4    time -- oh, I do want to raise -- discuss one more issue with

5    you.  I want you to look at paragraph 16 of the plea agreement.

6    Most defendants who cooperate with the government do so with

7    the hope that the cooperation will result in some benefit in

8    terms of the sentence, and that's what is addressed in

9    paragraph 16.

10            Now, there are two ways in which cooperation can

11    affect the sentence.  The first would be if the government

12    before or at the sentencing hearing were to file a motion under

13    5K1.1 of the guidelines which would ask the Court to sentence

14    below the guideline range because of the defendant's

15    substantial assistance.  The other method is a Rule 35(b)

16    motion.  That's filed after a person is actually serving his

17    sentence, and it asks the Court to reduce an already-imposed

18    sentence.

19            Now, you need to understand that only the government

20    can file one of those motions.  Mr. Sears cannot file such a

21    motion on your behalf.  The law doesn't recognize a motion from

22    a defense counsel in this area.

23            And what the government has said in this paragraph is

24    it's reserved the right whether it's going to file either of

25    those motions; and that means even if you've talked with the

1   agents, even if you testify at trial against a codefendant, if

2   the government's not satisfied that the evidence that you

3   provided was complete or there was something that wasn't fully

4   truthful or it just wasn't of any use to them and they don't

5   file one of these motions, that is not a violation of the plea

6   agreement; and it will not give you a basis to withdraw your

7   pleas.

8           Do you understand that?

9           THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  Moreover, nothing in 16 is binding on the

11  Court; so even if the government filed one of these motions, I

12  might not grant it; or I might not grant it as far as the

13  government requested.  For example, let's say they filed a Rule

14  35(b) motion asking the Court to reduce your sentence by

15  one-half and I felt that only a 10 percent reduction was

16  appropriate.  If that's the Court's decision, that's not a

17  violation of the plea agreement; and it would not give you a

18  basis to withdraw your pleas.

19          Do you understand that?

20          THE DEFENDANT:  I do, Your Honor.

21          THE COURT:  Now, have you had enough time to explain

22  to Mr. Sears everything you know about this case?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Has he discussed with you the nature of

25  these three charges and any ways in which you could defend

25

1    yourself against the charges?

2          THE DEFENDANT:  At length, Your Honor.

3          THE COURT:  And has Mr. Sears discussed the discovery

4    that he's received from the government with you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Has he shown you some of the discovery?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And, Mr. Sears, for the record, do you

9    feel you've gotten full discovery or sufficient discovery to be

10   able to fully advise your client about whether to go to trial

11   or not in this case?

12         MR. SEARS:  Yes, Your Honor.

13         THE COURT:  All right.  Are you fully satisfied with

14   the way in which your counsel has worked for you in this case?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And do you understand that you still at

17   this time have a right to plead not guilty to the criminal

18   information and to continue with your not guilty pleas as to

19   Counts 1 and 2 of the indictment and then to go to trial on

20   those three charges?

21         THE DEFENDANT:  I do, Your Honor.

22         THE COURT:  And if you were to go to trial, the

23   burden would be on the government to prove you guilty.  Not

24   only would they have that burden of proving you guilty, but it

25   would be as to each individual charge.  So the fact that you

1   were found guilty perhaps of one count doesn't mean you'd

2   necessarily be found guilty of the other count.

3           Do you understand that?

4           THE DEFENDANT:  I do, Your Honor.

5           THE COURT:  And the burden which the government would

6   face at trial is a burden of proof beyond a reasonable doubt.

7   Specifically, that means as to each of these three offenses,

8   the government must prove each and every one of the essential

9   elements of each offense beyond a reasonable doubt in order for

10  you to be convicted.

11          Do you understand that?

12          THE DEFENDANT:  I do, Your Honor.

13          THE COURT:  Now, if you pled not guilty and you went

14  to trial, there are various rights and protections you would

15  have at trial which you are basically giving up by pleading

16  guilty.  First of all, at trial you could see all the

17  government's witnesses and evidence and test it through the

18  questions of your lawyer.

19          Do you understand that?

20          THE DEFENDANT:  I do, Your Honor.

21          THE COURT:  You could ask the Court to issue

22  subpoenas that would require the presence at the courthouse of

23  witnesses or physical evidence that you could then use in your

24  defense at trial.  Do you understand that?

25          THE DEFENDANT:  I do, Your Honor.

27

1          THE COURT:  You could testify as a witness at trial.

2     Do you understand that?

3          THE DEFENDANT:  I do, Your Honor.

4          THE COURT:  You could, however, also choose to invoke

5     your Fifth Amendment right that protects you from

6     self-incrimination, which means you would not have to testify

7     at trial; and if you made that decision, no inference of guilt

8     could be drawn from your silence.  Do you understand that?

9          THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  You would have the right to be

11     represented by counsel throughout all your trial proceedings;

12     and if you could not afford to hire a lawyer for yourself, we

13     would make sure you had competent counsel appointed at

14     taxpayers' expense.  Do you understand that?

15          THE DEFENDANT:  I do, Your Honor.

16          THE COURT:  Now, you chose with the indictment to be

17     tried by a jury.  With a jury trial, again, ordinary citizens

18     are brought to the courthouse.  There'd be a total of 12 of

19     them that ultimately would be the jury, and any decision by the

20     jury would have to be unanimous.

21          With the criminal information charge, again, you

22     haven't actually opted one way or the other; but for either

23     charge, you could have a trial by a jury or a trial by a judge

24     alone; but in either type of trial, whether to a judge or to a

25     jury, you could not be convicted unless the government proved

1    your guilt beyond a reasonable doubt.

2         Do you understand that?

3         THE DEFENDANT:  I do, Your Honor.

4         THE COURT:  Now, if you continued with not guilty

5    pleas, Mr. Sears could try to attack the prosecution's case.

6    I'm not sure; I think our motions hearing was still set for

7    sometime in June; and I don't know what, if any, motions you

8    and Mr. Sears might have discussed.  There might or might not

9    be issues, for example, in a motion to suppress, if Mr. Sears

10   felt that there were legal defects in any searches conducted or

11   any statements obtained from you.  There may be legal arguments

12   that he could make.

13        Again, I have no idea what, if any -- what, if any,

14   defenses you might have; but what you need to appreciate is

15   that by pleading guilty, you're giving up those various

16   defenses that you might have.  Do you understand that?

17        THE DEFENDANT:  I do, Your Honor.

18        THE COURT:  And lastly, if you pled not guilty and

19   you went to trial and you were found guilty of any one or all

20   of these charges, you would have the right to appeal those

21   findings of guilt to a higher-level court; and do you

22   understand that under the terms of your plea agreement as well

23   as the way in which the law is structured, by being found

24   guilty based upon a guilty plea, you have given up your right

25   to appeal your conviction?

29

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Other than the written plea agreement

3    that's in court today, has anybody promised or suggested to you

4    that by pleading guilty, you would get a lighter sentence or

5    more favorable treatment by the Court?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Has anyone put any force or pressure on

8    you to plead guilty today?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  All right, the last document that we have

11    is the written statement of facts, which is incorporated in

12    your plea agreement.  The statement of facts is a seven-page

13    document.  On page 6, I see what appears to be your signature.

14    Did you, in fact, sign the statement of facts?

15          THE DEFENDANT:  I did, Your Honor.

16          THE COURT:  And do you understand that by signing the

17    statement, you are admitting to the truth of the 22 numbered

18    paragraphs; and you're also admitting that if the case had gone

19    to trial, the government could have proven all of those facts

20    beyond a reasonable doubt?  Do you understand that?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  All right.  So as I understand it, you do

23    agree that starting in or around 2008, you created Classy DC

24    Escorts, an Internet prostitution business.  Is that correct?

25          THE DEFENDANT:  Yes, Your Honor.

30

1              THE COURT:  And that in order to establish Classy,

2    you placed online advertisements on www.backpage.com and

3    www.eros.com, and the purpose of that was to solicit women

4    throughout the United States and Canada to work as prostitutes

5    primarily in the Washington, D.C. metropolitan area.  Do you

6    agree that you did that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And did you manage the daily operations

9    of Classy?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  Do you agree that starting in

12   June of 2009, Classy operated in several states, including

13   Virginia; Maryland; Washington, D.C.; New York; and Ohio?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  All right.  Do you agree that there was a

16   group of individuals associated with the Classy business?  In

17   other words, it wasn't just you by yourself?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  All right.  When did you first meet Kobla

20   Fiagbedzi?  I can't pronounce his name correctly.

21             THE DEFENDANT:  When did I meet him?

22             THE COURT:  When did you first meet him?

23             THE DEFENDANT:  Late 2008.

24             THE COURT:  All right.  And did there come a time

25   when he started to help you with the business?

31

1          THE DEFENDANT:  Yes.

2          THE COURT:  Specifically, what was he doing?

3          THE DEFENDANT:  He made the Web site, and he was

4   managing all the back-end Internet data for the Web site.

5          THE COURT:  Now, was he aware that the business was

6   involved in prostitution?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And how was he so aware?

9          THE DEFENDANT:  We discussed it a lot of times at my

10  house.

11         THE COURT:  Did he ever use the services of any of

12  the escorts to your knowledge?

13         THE DEFENDANT:  Not to my direct knowledge, Your

14  Honor.

15         THE COURT:  All right.  Did you eventually become

16  suspicious -- sorry, were you concerned in the 2008 time period

17  that you might attract the attention of law enforcement

18  authorities?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.  And did you open a

21  bank account at Bank of America in the name of Quizz

22  Productions and Investments, LLC, to hide the nature of the

23  business?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  All right.  Did you communicate with

1    customers and with the prostitutes via telephone or electronic

2    communication, text messages, e-mails, that sort of thing?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  And how -- what was the split

5    in terms of what were the -- when a prostitute was paid, how

6    much did she keep; and how much did Classy get?

7              THE DEFENDANT:  Classy got 40 percent, and she kept

8    60 percent.

9              THE COURT:  All right.  Now, it says in paragraph 9

10   that you e-mailed photographs of the Classy prostitutes to

11   Jennifer Churchill, also known as Jennifer Nukul, who was a

12   Photoshop editor based in California.  Is that accurate?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  Did you know Ms. Churchill?

15             THE DEFENDANT:  Just online and through text messages

16   and phone conversations, Your Honor.

17             THE COURT:  How did you first come in contact with

18   her?

19             THE DEFENDANT:  I was referred to her by her, at the

20   time I thought her ex-boyfriend or husband; I wasn't sure

21   exactly what.

22             THE COURT:  But some man referred her to you?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  And in what context did that referral

25   occur?  I mean, what did you mention -- why, why were the two

33

1    of you talking about Ms. Churchill?

2            THE DEFENDANT:  Well, he, he's a photographer, so

3    he --

4            THE COURT:  Was he photographing some of your girls?

5            THE DEFENDANT:  Yes.

6            THE COURT:  All right.  And?

7            THE DEFENDANT:  And so he referred -- when we

8    couldn't -- I couldn't always send people to California to get

9    pictures done, so we were trying to get a cheaper method to get

10   pictures done and edited if we had to.  So he suggested that he

11   had somebody that was pretty good with Photoshop and editing

12   photos, and that's how he introduced me to Jennifer.

13           THE COURT:  Now, were these photos actually nude

14   photos; or were the women clothed?

15           THE DEFENDANT:  It was both, nude and clothing.

16           THE COURT:  And why did you need any Photoshopping

17   done?

18           THE DEFENDANT:  Well, it's a common practice.  It's

19   like a magazine shoot, to smooth out edges, to make the photos

20   more attractive basically than, than they would normally be.

21           THE COURT:  Were the photos ever being done to cover

22   up any body parts or anything like that?

23           THE DEFENDANT:  Yeah.  A lot of times cover up tats.

24   Some ladies didn't want tattoos showing or certain body parts

25   showing or their faces showing a lot of times.

34

1          THE COURT:  Now, this man from California, did he

2    understand that these photographs were of women who were going

3    to be in prostitution?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And how would he understand that?

6          THE DEFENDANT:  We, we discussed it numerous times,

7    and he talked to the -- he talked to the girls themselves when

8    they got there.

9          THE COURT:  And so frequently, you would send the

10   girls to California to be photographed?

11         THE DEFENDANT:  I did about three-four times, because

12   it was, it was a hassle to do that, so only about three-four

13   times.

14         THE COURT:  Did you ever -- did you yourself ever

15   directly communicate to Ms. Churchill that these girls were

16   involved in prostitution?

17         THE DEFENDANT:  Not in those words, Your Honor.  It

18   was, it was more about this is an escort agency and I needed

19   the photos in a timely fashion or the girls would leave.  She

20   knew they were coming in to work; but the nature of the

21   business was not discussed, you know, directly with her.

22         THE COURT:  All right.  And the watermark that was

23   put in the middle of each photograph simply stated "Classy DC

24   Escorts"; is that correct?

25         THE DEFENDANT:  Yes.  A step further.  It was actual

35

1    stated "classydcescorts.com."

2            THE COURT:  All right.  Do you agree that you

3    employed Alafaka Opuiyo, known as Amy, and Kiana McKelvin,

4    known as Vicky, to answer telephones for Classy and schedule

5    appointments for Classy prostitutes with customers?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  All right.  And do you dispute in any

8    respect the fact that interstate commerce was greatly involved

9    in this operation through the use of cell phones, the Internet,

10    etc.?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  All right.  Do you agree that, in fact,

13    you were involved in punching Mr. Fiagbedzi when you became

14    concerned that he might be opening up a rival business?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  All right.  And did you also strike him

17    with the power cord of a laptop computer?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  And was that attack done in order to

20    further and increase your position of authority as the owner

21    and operator of Classy DC Escorts?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  All right.  Now, do you also agree that

24    on January 28, 2011, in Miami, Florida, you appeared at the

25    hotel room of a Classy prostitute known as Tracy and that you

36

1    were posing as a photographer?  Is that correct?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Tracy had not met you in person before?

4            THE DEFENDANT:  No, Your Honor.

5            THE COURT:  All right.  And you took photographs of

6    Tracy; and then you demanded that Tracy pay back a thousand

7    dollars that she owed Classy; is that correct?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Did you actually threaten to hurt her if

10   she didn't pay the money back?

11           THE DEFENDANT:  Vaguely, in those words, just saying

12   I was going to hurt her if she didn't pay back, yes.

13           THE COURT:  All right.  And did you actually take her

14   Social Security card and cell phone before leaving the room as

15   a sort of guarantee that she'd pay you?

16           THE DEFENDANT:  Yeah.  She sort of offered that since

17   I was -- since I didn't know if I was going to be able to get

18   back to her, she sort of offered that I take something as

19   collateral.  So yes, I did.

20           THE COURT:  All right.  And do you agree that in the

21   March 2011 time period, you gave Nassim Tabatabai, your

22   girlfriend at that time, $30,000 in prostitution proceeds so

23   that she would deposit those monies into her Bank of America

24   account in order to help you purchase an Aston Martin?

25           THE DEFENDANT:  Yes, Your Honor.

37

1          THE COURT:  All right.  And do you agree that on

2    March 5, 2011, she and you applied for -- you applied for an

3    automobile loan in the amount of 85,000 and change to the Apple

4    Federal Credit Union?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  And ultimately on March 21,

7    2011, in New Jersey, she purchased a 2009 Aston Martin vehicle

8    for you for the price of $136,175.  Do you agree that that

9    happened?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  And do you understand that

12    quite clearly that car would be forfeitable to the United

13    States as a proceed from the prostitution business?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Now, in paragraph 21, it says that you

16    have agreed that the gross proceeds generated by Classy DC

17    Escorts for the time period June 2009 through January 25, 2012,

18    which was about $1.6 million; is that correct?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And is it correct that there were over

21    100 different prostitutes employed by the business during that

22    time period?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Now, do you understand that if the Court

25    accepts your guilty pleas today, there'll be no further trial;

38

1   and you will be found guilty of these three charges?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you make any claim whatsoever that

4   you're innocent of the charge in Count 1 of the indictment,

5   that is, conspiring to commit money laundering?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  How then do you plead to that charge?

8          THE DEFENDANT:  Guilty, Your Honor.

9          THE COURT:  Do you make any claim that you're

10  innocent of Count 2 of the indictment, which charges you with

11  conspiracy to travel and use interstate facilities in aid of a

12  racketeering enterprise?

13         THE DEFENDANT:  No, Your Honor.

14         THE COURT:  How do you plead to that charge?

15         THE DEFENDANT:  Guilty, Your Honor.

16         THE COURT:  And do you make any claim that you're

17  innocent of the charge of committing a violent crime in aid of

18  racketeering activity?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  How then do you plead to that charge?

21         THE DEFENDANT:  Guilty, Your Honor.

22         THE COURT:  All right.  Mr. Sears, have you had

23  enough time to go over all three pleas with your client?

24         MR. SEARS:  Yes, Your Honor.

25         THE COURT:  Are you satisfied that the pleas accord

39

1    with your understanding of the facts, circumstances, and the

2    law?

3                MR. SEARS:  Yes.

4                THE COURT:  And are you satisfied that your client

5    has entered these three pleas in a knowing and voluntary

6    fashion?

7                MR. SEARS:  I am.

8                THE COURT:  All right, based on all these answers to

9    my questions, I'm satisfied, Mr. Akuiyibo, that you've entered

10   these three guilty pleas in a knowing and voluntary fashion,

11   that you've had the full advice of competent counsel throughout

12   your decision making as to whether to plead guilty or not; and

13   I also find that the written statement of facts as well as what

14   you've orally admitted to in court today is more than enough

15   evidence upon which to find you guilty beyond a reasonable

16   doubt of all three counts; so the pleas are accepted.

17               And the government has tendered a motion to dismiss

18   Counts 3, 4, 5, 6, 7, 9, and 10 of the indictment; and I just

19   want to make sure that that is exactly what's reflected.

20               Yeah, all right.  We may as well enter that dismissal

21   right now.

22               All right, we need to set this case for sentencing;

23   and how is Friday, August 10, for everybody?  I know it's all

24   right for the government.

25               MS. PEDERSEN:  That's fine, Your Honor.

40

1          THE COURT:  Is there any problem with codefendants

2    being sentenced on the same day from the government's

3    standpoint?

4          MS. PEDERSEN:  No.

5          THE COURT:  No?

6          MS. PEDERSEN:  Not necessarily, Your Honor.

7          THE COURT:  Mr. Sears, does that work for you?

8          MR. SEARS:  Your Honor, I was going to request the

9    3rd, and I can't remember at the moment why.  I know that the

10   3rd and the 10th were --

11         THE COURT:  The 3rd is available as well.  That's 79

12   days, but that should give the Probation Office enough time.

13         MR. SEARS:  Okay.

14         THE COURT:  The 3rd is better for you?

15         MR. SEARS:  Yes, please, Your Honor.

16         MS. PEDERSEN:  No objection from the government, Your

17   Honor.

18         THE COURT:  All right, Mr. Akuiyibo, you're going to

19   be visited in your cell by a federal probation officer who will

20   be preparing the presentence report.  Your full cooperation

21   with the officer is to your advantage.  You will also be

22   getting credit for the time you're now serving against the

23   sentence you finally receive in this case.

24         Do you understand that?

25         THE DEFENDANT:  Yes, Your Honor.

41

1          THE COURT:  Is there anything further we need to

2    address on this case?

3          MS. PEDERSEN:  Not at this time, Your Honor.

4          THE COURT:  And there's no forfeiture order you want

5    entered at this time?

6          MS. PEDERSEN:  Not at this time, Your Honor.

7          THE COURT:  All right, that's fine.

8          Ms. Pedersen, while you're here, my trial that I

9    thought was going to take up all day today and tomorrow

10   settled.

11         MS. PEDERSEN:  Okay.

12         THE COURT:  If there are any other pleas in this case

13   that you're trying to get in before I become unavailable,

14   you've got, you know, two-and-a-half days to do it.  I would

15   take a plea Friday afternoon.

16         MS. PEDERSEN:  I was going to ask you if the Court is

17   available on Friday.

18         THE COURT:  Yeah.  Not, not in the morning.  The

19   docket is a little on the heavy side; but anything after 1:00

20   we could take, all right?

21         MS. PEDERSEN:  Okay.  Thank you, Your Honor.

22         THE COURT:  All right, we'll recess court then for

23   the day.

24                        (Which were all the proceedings

25                         had at this time.)

42

1                  CERTIFICATE OF THE REPORTER

2        I certify that the foregoing is a correct transcript of

3   the record of proceedings in the above-entitled matter.

4

5

6                                        /s/
                                 Anneliese J. Thomson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25