FILED
IN OPEN COURT

JUN - 6

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 1:12CR38 |
| ) | |
| OTASOWIE CHRISTOPHER ASUEN ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1.  Beginning in and around the fall of 2009, defendant OTASOWIE CHRISTOPHER ASUEN (ASUEN), created Prime DC, an internet prostitution business. In order to establish Prime DC, the defendant placed newspaper advertisements and online advertisements on www.craigslist.com to solicit women to work as prostitutes, primarily in Virginia, Maryland, and Washington, D.C. In approximately 2010, the defendant began recruiting women from throughout the United States to work as prostitutes for Prime DC by placing advertisements on www.backpage.com.

2.  The defendant owned and operated Prime DC and managed the daily operations of the business, which included directing the actions of the prostitutes and employees of Prime DC. In or about April 2011, the defendant changed the name of his prostitution business to DMV INDYS.

3.  The defendant, together with others, doing business as Prime DC and DMV INDYS, carried on a business enterprise involving prostitution, an unlawful activity, that was

engaged in a continuous course of conduct. The purpose of the enterprise was to enrich the members and associates of the enterprise through the operation of a prostitution business.

4. The defendant communicated with the women answering his advertisements using telephones or electronic communication, such as text message or emails. The defendant and the women discussed the specific sexual activities they would engage in with clients for money and that his business would keep 40% of the hourly rate charged, and that the women would keep 60% of the hourly rate charged.

5. The defendant, with the help of K.F., created and maintained an internet website to establish, manage, promote and carry on his prostitution businesses. The websites for Prime DC and DMV INDYS posted pictures of various women, their physical characteristics, their "working name," the types of sexual services they would provide and their hourly rates. The website also posted contact numbers so clients could call or email the respective agency to book dates with the prostitutes.

6. The defendant used the internet to make online hotel reservations for the prostitutes, most of whom lived outside the metropolitan D.C. area, and to book airline reservations for their travel to the Eastern District of Virginia and elsewhere. The defendant caused the prostitutes to travel in interstate commerce to engage in prostitution. The defendant used multiple facilities of interstate commerce, including electronic mail, cellular telephones, automobiles that traveled on interstate highways, automated bank teller machines, priceline.com, orbitz.com, hotwire.com, and paypal, to further his prostitution businesses.

7. The defendant communicated with the prostitutes about their travel plans and gave them instructions on where to go and what to do upon their arrival. After the women arrived at their hotels, the defendant took their scantily-clad photographs, or arranged for others to take their photographs, in their hotel rooms.

8. The defendant emailed these photographs to Jennifer Churchill (a/k/a Jennifer Nukul), a photoshop editor based in California. The defendant instructed Churchill to cover the girls' tattoos and birthmarks, and blur their faces. When editing photographs for Prime DC, Churchill put a "watermark" in the middle of each photograph which stated: "PRIME DC".

9. The defendant used a booker or call-taker to answer the telephones, and to schedule appointments with the prostitutes. The booker screened the incoming callers to ensure they were not law enforcement.

10. The defendant employed three money collectors who traveled in interstate commerce to pick up money each night from the prostitutes located at the various hotels. One of the money collectors was K.F. The booker would send a text message or use Blackberry Messenger to tell the money collector where each prostitute was staying and how much money to collect from each girl. The defendant used instruments of interstate commerce, including cellphones and email, to communicate with the bookers to instruct them which back account to use for depositing the money collected from the prostitutes.

11. The defendant, and his employees, deposited cash earned from the prostitution businesses into either his own bank accounts or into a bank account in his brother's name. The accounts were used by the defendant to promote the carrying on of the business by paying for expenses and keeping lines of credit open in order to meet future expenditures. The defendant

alternated the use of these bank accounts to avoid having large cash deposits flowing into either account.

12. The defendant used the alias "Gene" when he operated PRIME DC, and "Chris" when he operated DMV INDYS.

13. Beginning in and around the fall of 2009, and continuing until on or around January 25, 2012, the defendant and Kuraye Tamunoibi Akuiyibo, who owned and operated Classy DC Escorts, shared information with one another about their respective prostitution businesses in order to enhance their efficiency. For example, the Prime DC and DMV INDYS call-takers shared their "references" with the call-takers of Classy D.C. Escorts. The defendant and Akuiyibo also shared information with one another about their various employees and prostitutes and shared the services of various money collectors.

14. Since their inception, Prime DC and DMV INDYS employed over 50 prostitutes. The gross proceeds generated by the prostitution businesses of Prime DC and DMV INDYS was in excess of $1,800,000. ASUEN used part of the proceeds to continue the operations of Prime DC and DMV INDYS, and used part of the remaining proceeds to purchase luxury items, including watches and jewelry.

15. The acts taken by the defendant, OTASOWIE CHRISTOPHER ASUEN, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated

under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: *(signature)*
Kimberly R. Pedersen
Assistant United States Attorney
Patricia Haynes
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Otasowie Christopher Asuen, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*(signature)*
OTASOWIE CHRISTOPHER ASUEN
Defendant

I am Otasowie Christopher Asuen's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

*(signature)*
Nina Ginsberg, Esq.
Attorney for Defendant