IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | CRIMINAL NO. 1:12CR038 |
| v. | ) | |
| | ) | Judge Brinkema |
| | ) | |
| KIANA CHERRIE MCKELVIN | ) | Sentencing: July 27, 2012 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Kimberly R. Pedersen and Patricia Haynes, Assistant United States Attorneys, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual, §6A1.2, files this Position of the United States With Respect to Sentencing in the instant case. The United States submits that the Sentencing Guidelines are appropriately calculated and establish a reasonable sentencing range that accounts for each of the factors set forth in 18 U.S.C. § 3553(a), and requests that this Court impose a sentence within the Guideline range, which is 21 - 27 months, as calculated in the Presentence Report.[1]

**Facts**

Defendant McKelvin initially joined Classy DC Escorts (Classy) as a prostitute, working under the name of "Nina." Hotel records reveal that she worked in April and May of 2009 and again in March 2010. According to Alafaka Opuiyo and Kuraye Akuiyibo, McKelvin began

---

[1] This includes an appropriate one-level additional reduction under §3E1.1(b) for timely notifying the Government of her intention to enter a guilty plea.

working as a scheduler or call-taker for Classy in late 2009 and early 2010, using the name "Vicky." According to the unindicted co-conspirator who created Classy's website, he created a "Google" calendar for McKelvin to assist her in tracking the dates, times and locations of the appointments that she scheduled for the Classy prostitutes. As the call-taker, McKelvin scheduled one-hour "dates" for the clients with the Classy prostitutes. While answering the phone and receiving text messages for Classy, McKelvin was responsible for advising the clients of the hourly fees, "screening" the clients to make sure they were not law enforcement, booking the dates and times for the appointments, communicating with the clients and prostitutes about the hotel location and room number for each date and coordinating the nightly pick-up of the prostitution proceeds.

Although co-defendant Alafaka Opuiyo worked as the main scheduler for Classy for the longest period of time, when Opuiyo was out of town, McKelvin would also take over her duties as the scheduler. Therefore, when Opuiyo was unavailable, especially on the weekends, Kuraye "Gerald" Akuiyibo would typically arrange for Opuiyo to deliver the "Classy" business cellphone she used for scheduling to McKelvin at her apartment in Virginia. Based on the volume of telephone calls and text messages intercepted during the investigation of this case, along with a review of various business records and statements of the co-conspirators, Classy was a very busy prostitution business that booked one-hour "dates," 24 hours a day, seven days a week. For example, a review of the "Google" calendar created for and used by McKelvin showed approximately 20 to 30 "dates" scheduled each day at hours ranging from 11 a.m. until 11 p.m. or later.

Although it is fair to say that McKelvin worked primarily as a backup scheduler for Classy, there was a roughly three-month period of time in late 2009 through March 2010 (after Akuiyibo had fired Opuiyo for being rude to callers[2]) when McKelvin worked as the sole scheduler for Classy. Although the exact amount of money made by Classy during that three month time period in early 2010 is not known with exact precision, the amount of money generated by Classy when McKelvin worked as the call-taker from December 20 through December 22, 2011, has been determined. The calculation was based upon FBI surveillance, statements by the unindicted co-conspirator who was working as an FBI informant and records and cash seized by the informant. According to information obtained from December 20-22, 2011, McKelvin booked appointments for approximately 9 Classy prostitutes[3]. The gross proceeds collected by the informant during that three day period was $8,879, which represents the 40% split paid to Classy by the 9 prostitutes. Therefore, in only three days time, when McKelvin was the sole scheduler, Classy collected approximately $22,197 in prostitution proceeds. At the posted $300 per hour rate, that figure represents approximately 73 one-hour "dates" over 3 days. It is not unreasonable to conclude that the number of dates scheduled by McKelvin, and the resulting gross proceeds for the three month time period in early 2010, would be close to one hundred thousand dollars.

---

[2] According to Opuiyo and law enforcement records, Opuiyo ran her own prostitution business, Capitol Treasures, after being fired from Classy. Opuiyo was confronted by law enforcement on or about March 1, 2010 in Montgomery County, Maryland, about her prostitution activities and shortly thereafter ceased running her own business and returned to Classy as the call-taker/scheduler.

[3] The eight women named in the statement of facts, plus "Chloe," who worked on December 22, 2011.

In addition, after her arrest, Opuiyo advised the government that McKelvin had advised her that she (McKelvin) was currently in possession of a new cellphone for a new escort agency that Akuiyibo intended to open in New Jersey. McKelvin explained to her that a new website for the business had been created and was up and running and that she was receiving calls on the phone. However, no "girls" had started working yet for the new agency.

## Disputed Factors

The defendant raises two objections to the guideline calculations. First, the defendant objects to the five point enhancement that was awarded the defendant under U.S.S.G. § 2G1.1(d)(1) because there were over five victims. Despite the fact that the defendant agreed and stipulated in the plea agreement that the application of § 2G1.1(d)(1) should apply, the defendant now argues that McKelvin should be considered a victim herself; thus, the enhancement should not apply.

Second, the defendant argues that McKelvin should receive a reduction for having a minor role in the offense. However, the evidence shows that, as a scheduler and call-taker, McKelvin played a vital role in the operation of Classy DC's daily business and should not be given a minor role reduction.

During the course of the conspiracy, over 100 prostitutes worked for the Classy organization. Although McKelvin was briefly a Classy prostitute, her primary role - and the role she pled guilty to - was that of scheduler. During her time as a scheduler, McKelvin scheduled "dates" for dozens of prostitutes. During just the three day period from December 20, 2011 - December 22, 2011, McKelvin booked dates for nine different prostitutes - Blake, Kandace, Lyssa, Brina, Cassidy, Julia, Nikkie, Sierra and Chloe, who generated approximately $22,197 in

4

prostitution proceeds. During the additional three month period in early 2010 when McKelvin was the sole scheduler for Classy, she would have booked dates for dozens of additional prostitutes[4]. McKelvin was given a five level increase under U.S.S.G. § 3D1.4, and the defense objects on the grounds that she was not only a participant in the organization but was also a victim. As explained above, her role as a scheduler dwarfs her brief role as a prostitute, but even if that were not so, she must still be held accountable for her role as scheduler. Therefore, a five level increase was properly applied because McKelvin was directly responsible for scheduling well over five Classy prostitutes.

Defense counsel also argues that McKelvin should be given a downward adjustment for having a minor role in the offense. The government disagrees. The work of the scheduler was absolutely vital to the success of the Classy DC organization: without receiving calls and text messages for "dates," screening potential clients, booking clients and directing clients to the various hotels, there would be no prostitution business. McKelvin had significant responsibility for running the daily affairs of this criminal enterprise for three months in 2010. As stated above, McKelvin's tenure as scheduler was much more significant than the three day period in December 2011 specifically mentioned in the statement of facts. Both Akuiyibo and Opuiyo confirm that Akuiyibo had at one time fired Opuiyo and that McKelvin worked as the scheduler for Classy for approximately three months, until Opuiyo was re-hired. In addition, McKelvin also worked as the scheduler on occasions when Opuiyo was unavailable. Considering the extent of McKelvin's involvement in the Classy DC organization, and the amount of money

---

[4]Classy "rotated" a number of new prostitutes into town approximately every three to five days.

earned by the organization during the time when McKelvin served as scheduler, she should not be awarded a minor role reduction. Finally, McKelvin's statements to Opuiyo after their arrest that she was in possession of another cellphone for yet another prostitution business started by Akuiyibo in New Jersey is indicative of her willingness to engage in criminal activity and diminishes her claim that she had a minor role in this offense.

**Argument**

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 125 S. Ct. 738, 767 (2005). "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553 states that the court should consider the nature and circumstances of the offense and characteristics of the defendant. In addition, it states that the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B).

The sentence imposed must meet a standard of reasonableness, *see Booker*, 125 S. Ct. at 765, and as the Fourth Circuit has recently stated, "reasonableness is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a)." *United States v. Green*, 2006

WL 267217, *5 (4th Cir. 2006). That being said, a sentence imposed within the properly calculated Sentencing Guidelines range is presumptively reasonable. *Id*. A district court's reasons for not applying the properly calculated Sentencing Guidelines range must be based on the statutory sentencing factors. *Id*.

### I. The Guidelines Range is Appropriate and Reasonable in Light of the Defendant's Criminal Conduct.

Given the facts of this case, the Guidelines range of 21 - 27 months imprisonment is appropriate and reasonable. The defendant's involvement with Classy DC Escorts spanned from 2009 through her arrest in 2012, a range of several years, during which Classy DC Escorts became a highly successful and extremely profitable prostitution business. Having been a prostitute herself, the defendant was well aware of what was expected of the prostitutes she scheduled, and she was also fully aware of the large amount of money being made by the organization. Moreover, the defendant's possession of a cellphone intended to facilitate a new prostitution business in New Jersey shows that the defendant's involvement in this criminal enterprise was not isolated, limited, sporadic or minor.

### II. A Sentence Within the Guidelines Range Would Provide Appropriate and Reasonable Deterrence.

A sentence within the Guidelines range is appropriate and necessary to provide the requisite level of deterrence to this defendant and to others who might not see the harm or illegality in using a cellphone to promote, facilitate, manage or carry on a business engaged in prostitution. 18 U.S.C. § 3553(a)(2)(B). The defendant's job was critical to the success of the Classy DC organization, because without an effective scheduler, the business would fail. The

defendant benefitted from the illegal work performed by the prostitutes and the large amount of money the customers were willing to pay to the agency for prostitution.

### III. A Sentence Within the Guidelines Range Will not Result in Disparate Sentences.

The defendant submits a sentence within the guidelines range would create disparity between her and co-defendant Jennifer Churchill, who pled guilty to a copyright violation and received no jail time. However, 18 U.S.C. § 3553(a)(6) refers to the need to avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty of similar conduct.* McKelvin pled guilty to conspiracy to travel and use of interstate facilities in aid of racketeering enterprises, in violation of 18 U.S.C. §§ 1952(a)(1), 1952(a)(3) and 371, a charge which carries a maximum of five years imprisonment. Churchill pled guilty to an infraction which carried no jail time. McKelvin has been found guilty of conduct that promoted, facilitated, managed and carried on the business of a criminal enterprise engaged in racketeering. The defendant's function of communicating directly with Classy's clients and prostitutes was clearly different than the criminal conduct of Churchill. Therefore, the sentence of McKelvin should not be compared to the sentence of Churchill, whose offense of conviction bears no resemblance to her own.

### Conclusion

The United States submits that a sentence within the Guidelines range is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). The United States therefore asks this Court to overrule the defendant's objections and impose a sentence within the guidelines range.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By:    /s/
Kimberly Riley Pedersen
Patricia M. Haynes
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Bar No. 49038
Phone: 703-299-3700
Fax: 703-299-3982

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via ECF this 19th day of July, 2012, which will send a copy of such filing (NEF) to all parties.

By:    /s/
Patricia M. Haynes
Kimberly R. Pedersen
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Bar No. 49038
Phone: 703-299-3700
Fax: 703-299-3982