IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:12cr038 |
| v. | ) | |
| | ) | Sentencing Date: August 17, 2012 |
| NASSIM TABATABAI, | ) | |
| | ) | Judge Brinkema |
| | ) | |
| Defendant. | | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW PLEA

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Kimberly R. Pedersen, Assistant United States Attorney, and Patricia Haynes, Assistant United States Attorney, hereby files its Response to the defendant's August 16, 2012, Motion to Withdraw Guilty Plea. For the reasons set forth below, the defendant's motion should be denied.

**A. Background**

The defendant was charged in a multi-count indictment with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), conspiracy to travel/use interstate facilities in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952, and one count of money laundering, in violation of 18 U.S.C. § 1957. On January 26, 2012, the defendant was arrested by the FBI at her residence in New York. After being advised of her *Miranda* rights, the defendant stated that she understood her rights and was willing to speak with agents.

During her subsequent interview, the defendant told the case agent that she met Kuraye Akuiyibo in the fall of 2007 at a nightclub in Washington, D.C. They began dating in 2008 and

have dated since then, on and off. According to the defendant, Akuiyibo told her that he had an engineering degree from Virginia Tech and an MBA from New York University. Akuiyibo also told her that he had a good job with AOL as a computer programmer and made money in the stock market. The defendant told the FBI that she also believed that Akuiyibo did business in Nigeria involving oil deals and tax liens and that Akuiyibo's cousin worked for an oil company.

The defendant stated that she traveled to Nigeria twice with Akuiyibo over the Christmas holiday in 2009 and 2010 and while there, noticed that the men talked about business a lot. According to the defendant, she stated that she did not think Akuiyibo had much money compared to her prior boyfriends, including an NBA player, and her own family's money. The defendant told the FBI she never asked Akuiyibo from where all his money came. The defendant claimed that Akuiyibo told her that he had really bad credit due to his losses in the real estate market and that was the reason he asked her to "use her credit" for him.

In addition, the defendant provided a detailed statement about her involvement in structuring deposits, from cash that Akuiyibo gave her, into her Bank of America account in order to purchase an Aston Martin, a luxury vehicle valued at more than $120,000, in her name for Akuiyibo. The defendant admitted that she and Akuiyibo made false statements about the amount of her income in order to qualify for a used car loan to purchase the Aston Martin and secure a lease for a luxury apartment in New York.

The defendant was arraigned on February 17, 2012, before this Court and pleaded not guilty. At or around the arraignment, the government provided a copy of the defendant's post-arrest statements, contained in an FBI 302, to the defense. Around the same time, the defendant provided the government with a February 16, 2012, letter from Kuraye Akuiyibo to the

defendant. A portion of the handwritten letter reads: "I'm sorry I got u in this mess even though it was the last thing I expected. You are completely innocent of EVERYTHING and I have made that very clear to everyone (lawyer/authority figure involved)." During pre-plea discussions, defense counsel advised the government that they were in possession of additional, similar letters from Akuiyibo that corroborated their position that the defendant did not know that Akuiyibo owned and operated a prostitution business and believed that the money she structured was legitimate. However, upon request by the government, the defense declined to produce these additional letters.

     Defense counsel also made it known that the defendant was concerned about the impact a felony conviction would have on her medical license, although she was not a practicing physician. The parties acknowledged that the evidence that the defendant structured cash deposits under $10,000 could be proven beyond a reasonable doubt. However, because the defendant contended that she did not know that Akuiyibo ran a prostitution business, the parties could not agree that the evidence would also establish that the defendant knew that the structured cash was the proceeds of illegal activity. Thus, the parties agreed to have the defendant waive indictment and venue, plead guilty to money structuring and argue at sentencing whether the defendant knew the source of the proceeds was illicit.

     The defendant appeared with counsel for the change of plea hearing on May 15, 2012. Pursuant to the written plea agreement and statement of facts which she had signed on May 7, 2012, and reviewed two days before the plea, the defendant pleaded guilty to a criminal information charging her with one count of money structuring, in violation of 31 U.S.C. § 5324(a)(3).

At the outset of the hearing, the defendant took the oath, swearing upon penalty of perjury to tell the truth. The Court conducted a thorough colloquy with the defendant, pursuant to Rule 11 of the Federal Rules of Criminal Procedure. During the plea colloquy, the Court ensured that the defendant had reviewed and understood the plea agreement and statement of facts that she had signed, had consulted with her attorneys, was satisfied with her attorneys's representation, had not taken any drugs or medication prior to the plea hearing, and understood what was going on during the plea hearing. The Court also reviewed the defendant's rights, including the right to plead not guilty, the right to a trial by jury, the right to confront and cross examine witnesses and the right to testify and present evidence (but that if she chose not to testify, that decision would not be held against her). The Court further reviewed the charge against the defendant and the associated penalties, including that the charge carried a maximum penalty of five years imprisonment and three years of supervised release. The Court asked the defendant if anyone had made her any promises not contained in the written plea agreement, and the defendant responded in the negative.

Finally, during the plea colloquy, the Court reviewed with the defendant the factual basis for her plea, contained in the written statement of facts signed by the defendant. The defendant agreed that she did the acts described in her statement of facts and, upon request by the Court, stated in her own words what she had done: I knew for years, before this offense, about the bank reporting requirement. I was in Virginia when I opened the account. It was Kuraye's (Akuiyibo) idea to open the account - he wanted to get an auto loan and the credit union had better rates. Kuraye had bad credit and I had to do it for him. I opened a Bank of America account in New York, it was my boyfriend (Akuiyibo)'s idea. The defendant also stated that Kuraye gave her

$10,000 cash and told me to deposit it in amounts under $10,000 and that she knew it was illegal. The next day, Kuraye gave the defendant $10,000 and was with her in New York when she deposited it. The third deposit the defendant made was for $9,800 and she caused wire transfers from Bank of America to the Apple Federal Credit Union.[1]

Based on the defendant's answers to the Court's questions, the Court concluded that the defendant had knowingly, voluntarily, and intelligently choose to plead guilty to the Criminal Information and found the defendant guilty.

### B.   Post-Plea

At the conclusion of the plea hearing, the Court ordered a Presentence Investigation Report (PSR) and scheduled sentencing for August 10, 2012. The PSR calculated the defendant's sentencing guidelines range at 6 to 12 months imprisonment.

The parties filed their positions on sentencing and the defendant attached numerous exhibits in support of her objections to some of the factual findings in the PSR, including that the defendant knew that the cash deposits she structured into her account were the proceeds of unlawful activity, pursuant to U.S.S.G. § 2S1.3(b)(1)(A)[2]. In support of her position, the defendant included the February 16, 2012, letter from Akuiyibo, as well as additional letters from Akuiyibo dated February 21, 2012, April 1, 2012 and April 22, 2012. These letters purport to show that the defendant did not know the structured funds were derived from illicit activity

---

1. There is no transcript of the plea hearing so these statements are simply the government's summaries of the defendant's statements based upon the government's notes from that day.

2. The defense has erroneously re-framed the argument as whether the defendant knew the source of the proceeds she structured were from prostitution specifically as opposed to illicit activity.

and/or believed that the defendant's cash was from legitimate activity. If the defendant's objections to the PSR calculations are sustained, then the applicable sentencing guidelines range could be lowered to a range of 0 to 6 months imprisonment.

The parties originally appeared for sentencing on August 10, 2012. At that time, the defendant asked the Court for additional time because of an "issue" that had recently come to his attention after reviewing discovery from the government. The Court granted the defendant's request and continued the sentencing until August 17, 2012. On August 16, 2012, the defendant filed the instant motion.

Clearly by the time the defendant filed its possession on sentencing on August 3, 2012, the defendant was in possession of at least four letters from Akuiyibo containing information arguably favorable to the defendant[3]. The dates on these letters, which were attached as defense exhibits, indicate that the defendant received them in advance of her May 12, 2012, guilty plea and the sentencings on August 10 and August 17, 2012. Now, the defendant concludes that the government "suppressed" this information, and that this information is *Brady* evidence, because the defendant has un-covered more detailed statements contained in the FBI 302 of Akuiyibo's interview. The defendant leaps to the conclusion that the discovery of this cumulative

---

3. The defendant points to "five categories" of exculpatory evidence. It should be noted that none of this evidence has any bearing on the offense of conviction, which simply requires proof that the defendant knew of the bank reporting requirements and structured cash deposits in amounts below the $10,000 threshold to avoid that requirement. The money structured can be legitimate money. Akuiyibo's statements that he had some legitimate income, and kept significant amounts of it, are not helpful to the defendant to prove she believed that the money she structured was legitimate absent some showing that the defendant was aware of this information. The defendant's post-arrest statement that she believed Akuiyibo had legitimate income indicates that she was already aware of this information well in advance of the guilty plea and was aware that Akuiyibo was the source of this information.

information justifies the withdrawal of the defendant's guilty plea. The defendant is simply wrong.

First, the defendant had already obtained the "favorable information" about the defendant's state of mind from two independent sources (the defendant herself and from Akuiyibo in the form of his letters) prior to the plea and before sentencing in this case. Moreover, the defendant has had a one week continuance to review the FBI 302s, which simply expound on the statements the defendant herself made about her state of mind and the statements Akuiyibo made about her in his letters, in order to effectively use them at sentencing.

This "new" information is merely cumulative of information previously in the possession of and known to the defendant. See United States v. Curtis, 931 F.2d 1011, 1014 (4th Cir. 1991) (prior to trial, the defendant knew about information the government had not disclosed and used it in his cross-examination of a government witness). There is no *Brady* violation where, as here, the defendant has actual knowledge of relevant information. United States v. Derrick, 163 F.3d 799, 821-22 (4th Cir. 1998). In this case, the defendant's letters show that she was well aware that her boyfriend, Akuiyibo, was willing to say, and had said (in his letters) that he told her that he had legitimate income, that he did not want her to know he ran a prostitution business and that he never discussed his business in front of her[4]. Where information is known, or should have been known to the defendant through the exercise of reasonable diligence, there is no *Brady* violation. The statements of Akuiyibo fall clearly within this category. The defendant was also aware that he was willing to provide this information on her behalf.

---

4. The fact that Akuiyibo claimed to have legitimate income and never explicitly told the defendant that he ran a prostitution business does not mean that she did not know about his prostitution business or that she believed the cash deposits she structured was from prostitution.

7

The defense has acknowledged that is has now has reviewed the FBI 302 which detail various statements from Akuiyibo concerning the defendant's knowledge of the source of the structured funds. Those statements expound on the previous statements Akuiyibo made to her in his four letters about her state of mind and also his willingness to testify as a witness on her behalf. As a result of the Court's one week continuance of the sentencing, the defense has had sufficient, additional time in which to make effective use of this information at sentencing.

Here, the government does not contest that Akuiyibo made various statements (documented in his letters and the FBI 302) which are arguably favorable to the defendant. The government contends that these statements about the defendant's lack of knowledge of Akuiyibo's prostitution business, or her belief that he had legitimate income, do not undermine the defendant's conviction for money structuring. However, the government does not object to the defendant's use of these statements at sentencing. The government simply asks the Court to give them whatever weight it deems appropriate in light of their personal relationship to one another when reviewing the defendant's objections to the PSR.

## II. ARGUMENT

Because the defendant has failed to provide any evidence that her plea was not knowing or voluntary, and since the defendant had the diligent advice of competent counsel when entering her guilty plea, and for the other reasons stated below, the defendant's motion to withdraw her guilty plea should be denied.

Pursuant to Fed. R. Crim. P. 11(d)(2)(B), the defendant bears the burden of showing a fair and just reason for requesting the withdrawal. See United States v. Ubakanma, 215 F. 3d 421, 424 (4th Cir. 2000).

The United States Supreme Court has recognized that a guilty plea is a "grave and solemn act, which is accepted only with care and discernment. United States v. Hyde, 520 U.S. 670, 677 (1997)(internal quotes omitted). In Hyde, the Supreme Court reversed the Ninth Circuit's decision to allow a defendant claiming duress to withdraw his guilty plea after his plea was accepted by the court, but before his plea agreement was accepted. See id. The Supreme Court recognized that "[a] plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive." Id. at 679 (quoting Kercheval v. United States, 274 U.S. 220, 223 (1927). In United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), the court noted six factors to be considered in ruling on a motion to withdraw a guilty plea: (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether defendant had close assistance of competent counsel; (5) whether withdrawal will prejudice the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources. See also United States v. Faris, 388 F.3d 452, 456-61 (4th Cir. 2004).

A.  **The defendant's guilty plea was knowing and voluntary.**

During the plea hearing, the defendant swore upon penalty of perjury to tell the truth, indicated that she understood that she had an absolute right to plead not guilty, and told the Court that she wanted to plead guilty because she was, in fact, guilty. The defendant was then confronted with a detailed statement of facts concerning her criminal conduct. The defendant agreed and acknowledged that it was true. The defendant also explained, in her own words, that on three separate dates, she knowingly structured cash deposits in amounts under $10,000 to

avoid a reporting requirement. The defendant also offered that she did this at the request of her boyfriend, Kuraye Akuiyibo.

Even at her arrest in January 2012, the defendant admitted her criminal conduct to the FBI. The defendant's last minute attempt to withdraw her guilty plea can only be viewed as a desperate attempt to avoid the imposition of her pending sentence.

### B.  The defendant has not credibly asserted her legal innocence.

The defendant argues that it always knew the evidence in this case was circumstantial. Actually, the government's evidence of the defendant's money structuring was based upon her confession, her bank records and an eyewitness, including a bank employee. To argue now that the government "suppressed" favorable evidence from her boyfriend, Akuiyibo, is unavailing where the defendant already had such information in its possession, or where with reasonable diligence could have discovered the extent of such detailed information. The defendant's argument that the defendant would not have waived venue for the structuring charge in light of the fact that the structuring charge exposed the defendant to a five year sentence whereas a conviction for the money laundering charges exposed her to a 20 year sentence, a guidelines range of 27-33 months and likely negative consequences to her medical license. The defendant has not credibly asserted her legal innocence, and therefore fails to satisfy the second prong of the Moore test.

### C.  There was a significant delay between the defendant's plea and her attempted withdrawal.

The defendant did not move to withdraw her guilty plea until August 16, 2012, one day before the re-scheduled sentencing hearing, and approximately one week after concluding that

there was some new or unresolved "issue" in this case. Here, the defendant is making a frivolous and unsupported claims of a *Brady* violation where she had actual knowledge of favorable information from Akuiyibo, actually used such information as exhibits for sentencing today and has had received additional time to prepare for the sentencing hearing. This motion is simply an attempt for a tactical advantage in the hopes of avoiding sentencing.

        **D.**       **The defendant had advice of competent counsel.**

During the plea hearing, the defendant told the Court that she had met with her lawyers and was satisfied with the advice and assistance of counsel.

The defendant was under oath when she told the Court she was guilty of money structuring and she signed the statement of facts acknowledging her involvement in that act and other relevant conduct. The defendant advised the probation officer, through counsel, that the Statement of Facts was accurate but filed objections to certain findings and conclusions in the PSR that she knew the source of the structured funds was from illicit activity. To support these objections, the defendant, through counsel, submitted numerous exhibits, including four letters from Akuiyibo. The defendant did not decide to bring her motion to withdraw until well after the Court accepted her guilty plea and only one day before sentencing.

At no time during this process did the defendant state that she was dissatisfied with counsel's representation. When asked under oath by the Court if she was satisfied with counsel, the defendant affirmed that she was. Indeed, the defendant should be satisfied with counsel where she received a more favorable plea agreement than to the charged offenses.

        **E.**       **The defendant's withdrawal of her guilty plea will prejudice the government, inconvenience the Court and waste judicial resources**

The defendant's withdrawal of his guilty plea will prejudice the government and waste judicial resources. Courts have recognized that the withdrawal of a guilty plea inherently prejudices the government to some degree. See, e.g., United States v. Carr, 80 F.3d 413, 420 (10th Cir. 1996). The prejudice that the government will suffer in this case is real and should not be casually cast aside. See United States . Namkoong, 616 F. Supp. 579 (E.D.V.A. 1985) (prejudice exists where government must relocate civilian witnesses after having "permitt[ed] them to scatter and then being required to reassemble them").

To try this complex racketeering case, the government would have to enlist the full attention of the case agents from the FBI to prepare for trial. For trial preparation, the government would be required to establish that Classy DC Escorts was a prostitution business, that it used facilities in interstate commerce and that the defendant, and others, laundered the illicit proceeds in the business through various means over a three year period. The government would have to locate, serve with a subpoena and coordinate the travel of numerous witnesses who reside throughout the United States to come to this district, arrange the transport of numerous prisoner witnesses to this district, including those pending designation to the Bureau of Prisons, and identify and mark voluminous trial exhibits, including wiretap evidence, bank records, witness statements, and evidence from surveillance and from six search warrants, including over 30 cell phones and computer devices.

Should the Court permit plea withdrawal in this case, where no legal basis exists, the Court eliminates the certainty and finality of a guilty plea. Just as the defendant has the right to expect finality with the entry of her plea, so too, the government has the right to expect that the plea will be withdrawn only under the most compelling circumstances and not simply because, as

in this case, the defendant seeks to avoid punishment for the crimes to which she has previously admitted.

### III. CONCLUSION

Because the defendant has failed to meet her burden of showing that her plea was not knowing and voluntary, because she had the assistance of competent counsel, and for the other reasons stated herein, the defendant's motion to withdraw her guilty plea should be denied.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:    /s/
Kimberly Riley Pedersen
Patricia Haynes
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Bar No. 39004
Phone: 703-299-3700
Fax: 703-299-3982

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing was filed via ECF on the 17th day of August and a copy provided to defense counsel.

                        By:    /s/
                               Kimberly R. Pedersen
                               Patricia Haynes
                               Assistant United States Attorneys
                               United States Attorney's Office
                               Justin W. Williams U.S. Attorney's Building
                               2100 Jamieson Avenue
                               Alexandria, Virginia 22314
                               Bar No. 39004
                               Phone: 703-299-3700
                               Fax: 703-299-3982