IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL NO. 1:12CR038 |
| v. | ) | |
| | ) | Judge Brinkema |
| | ) | |
| OTASOWIE CHRISTOPHER ASUEN | ) | Sentencing: August 31, 2012 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Kimberly R. Pedersen and Patricia Haynes, Assistant United States Attorneys, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual, §6A1.2, files this Position of the United States With Respect to Sentencing in the instant case.  The United States submits that the Sentencing Guidelines are appropriately calculated and establish a reasonable sentencing range that accounts for each of the factors set forth in 18 U.S.C. § 3553(a), and requests that this Court impose a sentence at the low end of the Guidelines range, which is 33 to 41 months, as calculated in the Amended Presentence Report.

**Facts**

In 2008, the defendant met co-conspirator Kuraye Akuiyibo at a Washington, D.C. nightclub through a mutual friend.  At the time, the defendant was employed in the computer field at a law firm in Washington, D.C.  The two men became fast friends, like brothers, and spent much of their time with one another.  By then, Akuiyibo was already running Classy DC Escorts, a criminal enterprise engaged in prostitution.  After the defendant lost his job during his

law firm's merger, Akuiyibo brought the defendant into the prostitution business. Akuiyibo showed the defendant a "how-to" book that he had purchased on the internet which was a road map for setting up a prostitution business. Thereafter, the defendant decided to open his own prostitution agency, which was closely modeled on Classy, with the early assistance of Akuiyibo.

The defendant ultimately recruited over 50 women who answered classified ads for "escorts" and who were knowingly and willingly seeking employment as prostitutes. The defendant's prostitution agency was originally called Prime DC, then DMV Indys. The defendant and Akuiyibo were allies and known within the Washington, DC prostitution industry to be affiliated with one another.

The defendant's prostitution business depended heavily on the internet and electronic communications in many ways: to recruit prostitutes through classified ads; to advertise the prostitutes to potential customers on the Prime or DMV Indys website and to book airfare and hotel reservations for the prostitutes to fly from other cities into the Washington, D.C. area. The defendant and Akuiyibo met K.F., an unindicted co-conspirator who built and created websites to advertise and market both of their prostitution businesses. The defendant also had K.F collect his prostitution proceeds on occasion.

The defendant employed a call-taker to screen potential clients and to schedule "dates" with the prostitutes. The call-taker asked and kept certain personal information about clients and, as needed, would contact the call-taker from Classy to verify that a new or potential client had a previous history with their agency of paying for prostitutes. This verification process was, essentially, to make sure that the client truly wanted to schedule an appointment with a prostitute and was not law enforcement.

The defendant and Akuiyibo would also search the internet for prostitutes and shared information with one another about those who would "steal, or" try to "steal," their portion of the proceeds from the agencies. Obviously, the defendant and Akuiyibo had an economic interest in preventing the "theft" of their portion of the proceeds. The defendant and Akuiyibo discussed how to minimize or prevent the prostitutes from "stealing" their funds and came up with new ways to maximize their ability to recover their percentage of the proceeds from the prostitutes each night.

On or about July 24, 2009, the defendant stumbled upon a website of an escort agency based in Philadelphia that featured 8 of the 9 women that the defendant, Akuiyibo and another affiliated agency had employed and who had stolen from them. On that date, the defendant sent Akuiyibo an email with photo attachments that said "[h]ere is why chicks should always get slapped when you run away . . chicks that have worked for us all on a site in philly . . . Enjoy."

According to C.A., a prostitute who worked for Classy in 2009, Akuiyibo advised her that his "brother" also owned and operated an escort service in Washington, D.C. During her first "tour," for Classy, Akuiyibo told her that her first client would be his "brother." C.A. described the "brother" as a black male, tall like Akuiyibo, with a thin build and clean cut. C.A. positively identified a photograph of the defendant as the "brother" she met and stated that he told her during their appointment that Akuiyibo was outside the hotel room to make sure that she did not leave.[1]

---

[1] C.A. eventually stopped working for Classy. Akuiyibo believed she had "stolen" Classy's portion of her prostitution proceeds after her last "tour." In September 2009, Akuiyibo tracked down C.A. and assaulted her with a deadly weapon in a hotel room in Maryland. Akuiyibo was held responsible for this, and other criminal conduct, and was sentenced by this Court to 51 months imprisonment.

According to Akuiyibo, the defendant learned from him that Akuiyibo had recently heard that K.F. and a Classy prostitute had discussed running an independent prostitution business. The defendant was aware that Akuiyibo was very angry about this and wanted to confront K.F. According to Akuiyibo, he asked the defendant to come to the apartment Akuiyibo shared with his girlfriend when he met K.F., which the defendant did. Later, Akuiyibo verbally and physically attacked K.F., striking him in the head with a power cord. According to Akuiyibo, the defendant stepped in between him and K.F. and "broke up the fight." However, K.F. added that at some point during the confrontation, the defendant told him "you are lucky you are someone special, otherwise, you'd be in the trunk of a car."

The defendant employed three money collectors, including one of his brothers and K.F. as needed, who traveled to various hotels in Virginia, Washington, D.C. and Maryland to pick up thousands of dollars in prostitution proceeds. The defendant's call-taker sent text messages advising the money collectors to which hotel they needed to go and from which girl to collect money. The defendant communicated with the call takers and directed them to deposit the prostitution proceeds into various bank accounts. The defendant and his employees deposited cash earned from his prostitution business into various bank accounts held in his own name or into a bank account held in the name of one of his brothers. The amount of proceeds generated by the defendant's criminal enterprise was in excess of $1.8 million and his own profits were at least $727,193.00[2].

---

[2]The defendant has already agreed to forfeit his profits to the government, along with other items, including six high-end watches and the remainder of the proceeds from the sale of his Aston Martin, as part of a consent order of forfeiture.

**Argument**

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 125 S. Ct. 738, 767 (2005). "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553 states that the court should consider the nature and circumstances of the offense and characteristics of the defendant. In addition, it states that the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B).

The sentence imposed must meet a standard of reasonableness, *see Booker*, 125 S. Ct. at 765, and as the Fourth Circuit has recently stated, "reasonableness is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a)." *United States v. Green*, 2006 WL 267217, *5 (4th Cir. 2006). That being said, a sentence imposed within the properly calculated Sentencing Guidelines range is presumptively reasonable. *Id*. A district court's reasons for not applying the properly calculated Sentencing Guidelines range must be based on the statutory sentencing factors. *Id*.

**I.   The Guidelines Range is Appropriate and Reasonable in Light of the Defendant's Criminal Conduct.**

Given the facts of this case, the Guidelines range of 33-41 months imprisonment is appropriate and reasonable. The defendant was the leader and organizer of a criminal enterprise engaged in prostitution in the metropolitan Washington, D.C. area. The defendant's illicit prostitution businesses generated over $1.8 million, of which $727,193.00 was essentially tax free money at the defendant's disposal[3].

The defendant used some of the proceeds from his criminal enterprise for the daily operation of his business, such as the purchase of hotel fees and airfare for the prostitutes. However, the defendant spent his enormous profits lavishly and lived a fairly opulent lifestyle by living in a luxury condo in Miami with Kuraye Akuiyibo, purchasing an Aston Martin valued at over $100,000, living an extravagant lifestyle, including purchasing expensive luxury items, such as clothing and at least six (6) high end watches.

**II.   A Sentence Within the Guidelines Range Would Provide Appropriate and Reasonable Deterrence.**

The defendant's close friendship and professional association with Kuraye Akuiyibo benefitted both men personally and professionally and enhanced their extremely profitable illicit businesses. The defendant profited enormously from his criminal lifestyle and would not have ceased operations for any foreseeable future absent law enforcement intervention.

---

[3] While the government does not have any evidence of what the Prime DC or DMV Indys prostitutes did with their share of the proceeds, it is not unreasonable to infer that they did not declare this cash as taxable income either.

A sentence within the Guidelines range is appropriate and necessary to provide the requisite level of deterrence to this defendant and others who might not view the collection and laundering of the proceeds of prostitution as a serious offense. 18 U.S.C. § 3553(a)(2)(B).

## Conclusion

The United States submits that a sentence at the low end of the Guidelines range is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). The United States therefore asks this Court to impose a sentence at the low end of the 33-41 months guidelines range.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By:    /s/
Kimberly Riley Pedersen
Patricia M. Haynes
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Bar No. 49038
Phone: 703-299-3700
Fax: 703-299-3982

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via ECF this 24th day of August, 2012, which will send a copy of such filing (NEF) to all parties.

By:     /s/
Kimberly R. Pedersen
Patricia M. Haynes
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Bar No. 39004
Phone: 703-299-3700
Fax: 703-837-8242